## PERMA–MAID CO., Inc., v. FEDERAL TRADE COMMISSION.

### No. 8516.

Circuit Court of Appeals, Sixth Circuit.

June 25, 1941.

T. R. Iserman, of New York City (Larkin, Rathbone & Perry, of New York City, and Maxwell & Ramsey, of Cincinnati, Ohio, on the brief), for petitioner.

Martin A. Morrison, of Washington, D. C. (W. T. Kelley, Martin A. Morrison, S. Brogdyne Teu, II, and James W. Nichol, all of Washington, D. C., on the brief), for respondent.

Before HICKS, ALLEN, and HAMILTON, Circuit Judges.

HICKS, Circuit Judge.

Petition by the Perma-Maid Company, Inc., to review an order of the Federal Trade Commission directing it to cease and desist from,—

"1. Representing that food prepared or kept in aluminum utensils is detrimental to the user thereof;

2. Representing that the preparation of food in aluminum utensils causes the formation of poisons;

3. Representing that the consumption of food prepared or kept in aluminum utensils will cause ulcers, cancers, cancerous growths and various other ailments, afflictions and diseases."

The Commission seeks the enforcement of the order.

The order is based upon findings from the evidence and upon a stipulation of the parties. In substance the findings are that petitioner, a corporation, has its principal place of business in Cincinnati, Ohio; that it is a subsidiary of the Electric Auto-Lite Company and the selling agent and distributor of stainless steel cooking utensils manufactured by that company; that it has offices in various cities of the country and employs about three hundred salesmen who work therefrom and obtain orders for the purchase of cooking utensils in house to house canvassing; that utensils so ordered have been delivered by petitioner from Cincinnati to the purchasers in other states; that petitioner for more than one year prior to December 13, 1937, the date of its answer to the complaint, has been thus engaged in interstate commerce; that in the sale of such utensils it is, and has been, engaged in substantial competition with other individuals, firms and corporations, who are and have been engaged in the business of manufacturing, selling and distributing in interstate commerce cooking utensils made from steel and other metal or materials; that petitioner's agents and salesmen have exhibited samples of its products to prospective purchasers and for the purpose of inducing the purchase of its products, have, upon their own initiative, made false, misleading and unfairly disparaging statements and representations with respect to the danger from the use of aluminum in the manufacture of kitchen utensils and the dire effects produced by aluminum materials upon foods prepared therein; that these false and misleading statements have been made in pamphlets, leaflets and circulars, and in sales talks to prospective purchasers. The Commission found the following to be typical of the various statements and representations made by petitioner's salesmen to would-be purchasers:

"(1) Scientific information pertaining to the ingestion of aluminum compounds is now available. With all the Governmental reports of the deleterious effects of this metal before us, surely we should heed the warnings when we consider the fact that many millions of dollars worth of aluminum is used for the purpose of cooking and storing foods throughout the United States.

"(2) The metal is soft and forms various poisons with the foods with which it is in contact.

"(3) There is no objection to the use of this metal for casket purposes or as a mordant in the dye which is used to color the clothing which covers a corpse.

"(4) The manufacturers of dyes state in their literature that we should (NOT) do our dyeing in aluminum—There is a reason.

"(5) The substance is used for tanning hides, wall paper sizing, etc. It is the principal metal base used in making bricks, sewer pipe and road building materials. * * *

"(6) Boil some of your drinking water in an aluminum dish for one-half hour, pour in a clear glass can and after cooling several hours note the white feathery substance in the bottom of the can. This is the poison dissolved from the utensil which readily combines with other chemicals forming aluminum compounds, some of these are: Aluminum acetate, chloride of aluminum, aluminum phosphate, aluminum sulphate. A host of other potent poisons are manufactured during the ordinary

process of cooking foods in aluminum dishes. These are formed according to the kind of food cooked therein.

"(7) Did you ever find maggots in your aluminum pans? Do you know that such pans may be full of the most deadly bacteria known to science?

"(8) Almost daily you read in the press of hundreds being poisoned by eating food cooked in aluminum. Do you know how such poisonings occur? If you do not, this circular will tell you.

"(9) It has frequently happened that sauerkraut has eaten holes completely through the aluminum kettles in which it was prepared.

"(10) Vegetables that are cooked with soda and salt will produce similar results.

"(11) Corned beef corrodes most aluminum utensils. * * *"

The Commission further found that these statements and representations have served as representations that food prepared or kept in aluminum utensils was detrimental to health and caused formation of poisons and that the consumption of such food would cause ulcers, cancers, cancerous growths and other ailments, afflictions and diseases.

It found that aluminum has for many years been used in the manufacture of cooking utensils and has been found to be satisfactory; that the consumption of food prepared or kept in aluminum kitchen utensils will not cause ulcers, cancers, cancerous growths or other ailments or diseases and that the preparation of food in aluminum utensils does not cause the formation of poison.

It further found that there are among the competitors of petitioner distributors of similar utensils made from aluminum, steel and other materials who do not falsely represent their products or make false and disparaging statements concerning the products of their competitors; that the false, misleading and unfairly disparaging representations made by petitioner's salesmen had the tendency to, and did, mislead and deceive a substantial number of persons, to whom they were made, into erroneously believing that aluminum cooking utensils are harmful and dangerous, thus inducing them to purchase petitioner's utensils instead of those of its competitors.

■ These findings based almost entirely upon stipulation are conclusive [Federal Trade Commission Act, § 5, 15 U.S.C.

A. § 45] and sufficient to support the cease and desist order unless the order is completely negatived and destroyed by certain other findings upon which petitioner relies, i. e., the Commission found from the stipulation that the false and misleading statements and representations made in the pamphlets, leaflets and circulars heretofore referred to were not printed, obtained or paid for by petitioner but were obtained and paid for by its agents and representatives from persons having no connection with or interest in petitioner's business. However, petitioner agrees that the acts of its agents were within the scope of their employment and that it must assume full responsibility therefor.

The Commission further found that upon discovering that certain of its agents had made the statements and representations and had distributed the pamphlets and other literature referred to, petitioner forbade them to make such statements and representations or to distribute such literature; and for more than one year had on every occasion, where a violation of its instructions had been called to its attention, discharged or otherwise penalized its agents for violating its orders.

■ These findings afford no warrant for setting aside the cease and desist order. They do not show that petitioner made any attempt to prevent the unlawful practices prior to the filing of the complaint on November 20, 1937. They do not conclusively show that any effort at any time made by it to prevent the practices was successful. Moreover, an abandonment of the practices, even if clearly shown, does not render the controversy moot. Such is the latest pronouncement of the Supreme Court. Federal Trade Commission v. Goodyear Tire & Rubber Co., 304 U.S. 257, 260, 58 S.Ct. 863, 82 L.Ed. 1326. It is the duty of the Commission [§ 5 of Federal Trade Commission Act] "to *prevent* persons, partnerships, or corporations * * * from using unfair methods of competition in commerce and unfair or deceptive acts or practices in commerce." (Italics ours.)

■ This duty is not discharged by abandoning the complaint upon a showing, not clearly made here, that the unlawful practices have been discontinued. Such showing constitutes no guaranty that they will not be resumed. See Fed. Tr. Commission v. Wallace, 8 Cir., 75 F.2d 733, 738. The law prescribes one effective method, and one only, by which the Commission

may discharge its duty, i. e., the issuance of an appropriate cease and desist order. The order in no wise injures petitioner and will be an effective aid to it in its efforts to put a stop to the unfair practices.

The petition to review is denied and an appropriate decree will be entered affirming the order and decreeing its enforcement.