SCIENTIFIC MFG. CO., Inc., et al. v. FEDERAL TRADE COMMISSION.

No. 7756.

Circuit Court of Appeals, Third Circuit.

Argued Oct. 7, 1941.

Decided Dec. 19, 1941.

William DuBose Sheldon, of Washington, D. C. (William Jenks Woolston, of Philadelphia, Pa., on the brief), for petitioners.

Allen C. Phelps, of Washington, D. C. (W. T. Kelley, Chief Counsel, Federal Trade Commission, and James W. Nichol, Harry D. Michael, E. G. Pabst, and R. E. Schrimsher, all of Washington, D. C., on the brief), for respondent.

Before MARIS, JONES, and GOODRICH, Circuit Judges.

JONES, Circuit Judge.

This matter is here on petition to review[1] a cease and desist order entered by the Federal Trade Commission against the present petitioners (respondents below).

The facts whereon the Commission acted are not in dispute. The petitioner, Scientific Manufacturing Company, Inc., is a Pennsylvania corporation having its place of business in Scranton, Pennsylvania, which is also the place of residence of Force, the other petitioner, who, with members of his immediate family, owns all of the capital stock of the company. Force, as president of the company, controls and directs its activities and practices. Among the latter are the publication and sale of pamphlets containing two articles[2] written by Force in intended exposition of alleged dangers to health from poisoning which, according to him, attend the use of aluminum utensils in the preparation or storage of food for human consumption.

The Commission found that Force and his company sold and distributed many of the pamphlets throughout the United States "to the public and to various manufacturers, distributors, dealers and salesmen of cooking and storage utensils made of materials other than and competitive with utensils made of aluminum."[3] Neither Force nor his company was engaged in any way or interested materially in the manufacture, sale or distribution of cooking utensils of any sort. As indicated by the Commission's findings, the petitioners' course of trade in interstate commerce was limited to the sale and distribution of the pamphlets. This activity was motivated by a zeal on the part of Force, who is a graduate pharmacist and chemist of some twenty-odd years experience, to propagate his own unorthodox ideas and theories by independently disseminating what, unquestionably, he believes to be the truth concerning the effect of aluminum metals upon foods. The Commission further found that the statements and representations respecting aluminum utensils, as contained in the pamphlets, were "false, misleading and disparaging";[4] that they serve to "mislead and deceive a substantial portion of the purchasing public with the false and erroneous belief that cooking utensils made from aluminum are * * * harmful and are dangerous to the consumers of food prepared or stored" therein; and that the present petitioners through their sale and distribution of the

[1] Sec. 5 of the Federal Trade Commission Act, as amended, 52 Stat. 111, 15 U.S.C.A. § 45.

[2] The pamphlet articles, which are entitled "Poisons Formed by Aluminum Cooking Utensils" and "Are You Heading for the 'Last Round-up'?", represent, as the Commission correctly summarized, "that aluminum is a poisonous metal and that the use of aluminum utensils for the preparation, cooking or storage of food is unsafe, deleterious, disease producing, poisonous, death dealing and otherwise dangerous to health because of the aluminum imparted to foods during such process and the resulting absorption and accumulation of such metal in the system of the consumer of foods so prepared, cooked or stored; and further that aluminum utensils are manufactured of a soft metal, that such utensils easily become corroded and pitted when used for cooking and tend to provide lodgment for food particles which operate as culture media for bacteria and spores, both poisonous and otherwise."

[3] The complaint had alleged that the petitioners sold and distributed the pamphlets principally through manufacturers of cooking utensils in competition with aluminum ware, but the Commission made no finding in such relation. According to the record, however, about twenty per cent. of the pamphlets distributed by the petitioners came into the hands of manufacturers or distributors of non-aluminum utensils.

[4] On this issue of scientific fact, the Commission heard only the witness Force (who represented himself) for the one side and, in opposition thereto, five witnesses who were closely associated with or employed by the Aluminum Company of America or affiliates.

pamphlets supply an "instrumentality by means of which uninformed or unscrupulous manufacturers, distributors, dealers and salesmen may deceive or mislead members of the purchasing public and induce them to purchase utensils made from materials other than aluminum".

On this factual basis, the Commission concluded that the acts and practices of the present petitioners were "to the prejudice and injury of the public and constitute unfair and deceptive acts and practices in commerce within the intent and meaning of the Federal Trade Commission Act". The cease and desist order thereupon ensued.[5]

The petitioners assail the order on the grounds that (1) the Commission was without jurisdiction under the facts of the instant case because the petitioners had no material interest in or connection with the manufacture, sale or distribution of cooking utensils of any kind; that (2) the publication and sale of pamphlets containing statements which, even though unfounded or untrue, express the honest belief of the publisher are not unfair or deceptive acts or practices as contemplated by Section 5 of the Federal Trade Commission Act as amended; and that (3) the Commission's order abridges the petitioners' freedom of speech and of press in violation of the First Amendment of the Federal Constitution.

The Commission contends that its jurisdiction in the circumstances shown derives from the amendment of March 21, 1938, c. 49, Sec. 5(a), 52 Stat. 111, 15 U. S.C.A. § 45(a) which enlarged the original Federal Trade Commission Act by adding thereto a denouncement of "unfair or deceptive acts or practices in commerce" and by correspondingly empowering and directing the Commission to prevent the use of such acts or practices. From this, the Commission argues that the petitioners, being commercially engaged in an interstate business (the sale and distribution of pamphlets) are amenable to the Commission's interdictions when any of their acts or practices are found by the Commission to be unfair or deceptive in respect of some article of commerce in an unrelated trade and notwithstanding such acts or practices are neither unfair nor deceptive in respect of the petitioners' trade in interstate commerce. As a corollary of the Commission's argument, if the subject matter of the petitioners' pamphlets were contained in an article in a newspaper, magazine or book of interstate circulation, such publication would be equally restrainable at the instance of the Commission. Obviously, a grant of power so vast is not to be accorded an administrative body except upon plain legislative direction within constitutional bounds. This brings us then to the matter of congressional intent for first consideration.

As originally enacted in 1914, the Federal Trade Commission Act declared "unfair methods of competition in commerce" to be unlawful and empowered the Feder-

<hr />

[5]-The Commission's order, in material part, is as follows:

"It is ordered that the respondents, Scientific Manufacturing Company, Inc., and its officers, and Howard J. Force, individually and as President of the Scientific Manufacturing Company, Inc., and their respective representatives, agents and employees, directly or through any corporate or other device, in connection with the offering for sale, sale and distribution of pamphlets in commerce, as 'commerce' is defined in the Federal Trade Commission Act, do forthwith cease and desist from:

"(1) Representing that the use of food prepared or kept in aluminum utensils is dangerous to the health of the consumer;

"(2) Representing that the preparation or storage of food in aluminum utensils causes the formation of poisons;

"(3) Representing that the preparation, cooking or storage of food in aluminum utensils imparts aluminum in quantities sufficient to cause injury to the health of the consumer, or that the aluminum so imparted has a cumulative effect upon the system of the consumer;

"(4) Representing that aluminum utensils easily corrode or pit and thereby provide lodgment for bacteria and spores, both poisonous and otherwise;

"(5) Representing that the consumption of food prepared or stored in aluminum containers will cause cancer, Bright's Disease, diabetes, liver trouble, indigestion, constipation, ulcers, carbuncles, nervousness, poisoning, or any other disease or ailment of the human body;

"(6) Making or causing the making of any false statements or representations with respect to the effect that the consumption of food prepared, cooked or stored in such utensils might have, or has had, on the health of the consumer or consumers of such foods, which statements unfairly disparage the quality value or use of aluminum cooking or storage utensils."

al Trade Commission to prevent the use of such methods. Thenceforth, a train of litigated cases[6] delineated a wide and varied range for the exercise of the Commission's jurisdiction but always, it is believed, in matters involving unfair trade or commercial acts or practices for the advantage of the offender over competitors and to the detriment of the public. The presence of the public interest was essential to an exercise of the Commission's jurisdiction. Federal Trade Commission v. Klesner, 280 U.S. 19, 27, 50 S.Ct. 1, 74 L. Ed. 138, 68 A.L.R. 838.

Then came the decision in Federal Trade Commission v. Raladam Co., 283 U.S. 643, 654, 51 S.Ct. 587, 592, 75 L. Ed. 1324, 79 A.L.R. 1191, where the Supreme Court held that "one of the facts necessary to support [the Commission's] jurisdiction to make the final order to cease and desist, is the existence of competition;" etc. It will be remembered that the proscription in the original Act was limited to "unfair methods of competition in commerce". In the presence of this jurisdictional requirement, it became apparent that there could be instances of unfair or deceptive acts or practices in commerce injurious to the public which the Commission was without jurisdiction to prevent. Such was the case where the offender had a monopoly (i.e., no competitors) or where all competitors in a particular trade made use of the same practices. Moreover, even where competition did actually exist, although obscure, it was time-consuming and expensive for the Commission to develop the essential fact of competition. It was for the purpose of clothing the Commission with jurisdiction to act in respect of unfair acts or practices in commerce regardless of their effect upon competition that the amendment of 1938 was offered and enacted.[7] True enough, as the Commission argues, the effect of the amendment was to so broaden the Commission's jurisdiction as to enable it to act where only the public interest was adversely affected by the unfair practices. None the less, it was still the unfair acts of traders in the affected commerce that the Commission was empowered to enjoin. The public interest to be served is no different under the amendment than it was under the original Act. The change effected by the amendment lay in the fact that the Commission could thenceforth prevent unfair or deceptive acts or practices in commerce which in-

---

[6] Misleading advertising: Electro Thermal Co. v. Federal Trade Commissioner, 9 Cir., 91 F.2d 477; Sears, Roebuck & Co. v. Federal Trade Commission, 7 Cir., 258 F. 307;

Combinations to suppress competition: Fashion Originators' Guild of America, Inc., et al. v. Federal Trade Commission, 312 U.S. 457, 668, 61 S.Ct. 703, 85 L. Ed. 949; Butterick Pub. Co. et al. v. Federal Trade Commission, 2 Cir., 85 F. 2d 522;

Price fixing by associations or combinations: California Rice Industry v. Federal Trade Commission, 9 Cir., 102 F.2d 716;

Practices considered contrary to public policy and morals: Federal Trade Commission v. R. F. Keppel & Bro., Inc., 291 U.S. 304, 54 S.Ct. 423, 78 L.Ed. 814;

Use of containers similar to those of another manufacturer which tend to mislead purchasing public: Federal Trade Commission v. Balme, 2 Cir., 23 F.2d 615;

Use of deceptive names which tend to mislead: Federal Trade Commission v. Royal Milling Co., 288 U.S. 212, 53 S. Ct. 335, 77 L.Ed. 706;

Misleading representation of a product: Federal Trade Commission v. Winsted Hosiery Company, 258 U.S. 483, 42 S.Ct. 384, 66 L.Ed. 729;

Price maintenance policy by manufacturer: Federal Trade Commission v. Beech-Nut Packing Co., 257 U.S. 441, 42 S.Ct. 150, 66 L.Ed. 307, 19 A.L.R. 882; Armand Co., Inc., v. Federal Trade Commission, 2 Cir., 78 F.2d 707; Toledo Pipe-Threading Mach. Co. v. Federal Trade Commission, 6 Cir., 11 F.2d 337;

Misbranding of a product: Federal Trade Commission v. Algoma Lumber Co., 291 U.S. 67, 54 S.Ct. 315, 78 L.Ed. 655;

Untruthful statements about a competitor: Chamber of Commerce of Minneapolis et al. v. Federal Trade Commission, 8 Cir., 13 F.2d 673;

False therapeutic claims for a product: Justin Haynes & Co., Inc., v. Federal Trade Commission, 2 Cir., 105 F.2d 988.

[7] See Report of Committee on Interstate and Foreign Commerce, 75th Cong. 1st Sess., House Reports 1613, p. 1; letter on behalf of the Federal Trade Commission by Acting Chairman Ferguson to Senator Wheeler, Chairman of the Senate Committee on Interstate Commerce, printed in report of hearings on S. 3744, p. 6; and explanation of the amendment by Congressman Wolverton, Congressional Record, 75th Cong. 1st Sess., p. 551.

juriously affected the public interest alone, while under the original Act the Commission's power to safeguard the public against unfair trade practices depended upon whether the objectionable acts or practices affected competition. But the restrainable acts or practices in commerce continued to be such as are performed or perpetrated in the trade affected by the offenses,[8] whether or not there is competition. In short, the Commission's intervention is limited to acts or practices in the affected trade. If the amendment were given any broader scope, the Act would relate to far more than trade practices and the Commission would become the absolute arbiter of the truth of all printed matter moving in interstate commerce, even where scholars in the particular field of knowledge were in wide disagreement. "The findings of the commission as to facts, if supported by testimony, shall be conclusive."[9] The courts are bound to accept them as such. Federal Trade Commission v. Standard Education Society, 302 U.S. 112, 117, 58 S.Ct. 113, 82 L.Ed. 141; Federal Trade Commission v. Algoma Lumber Co., 291 U.S. 67, 73, 54 S.Ct. 315, 78 L.Ed. 655.

It follows from what we have said that, the present petitioners not being engaged or materially interested in the cooking utensil trade, the Commission was without power to enjoin their sale and distribution of the pamphlets which they published concerning the use of aluminum cooking utensils and, further, that the publication, sale and distribution of matter concerning an article of trade by a person not engaged or financially interested in commerce in that trade is not an unfair or deceptive act or practice within the contemplation of the Federal Trade Commission Act, as amended, if the published matter, even though unfounded or untrue, represents the publisher's honest opinion or belief.

In the view we thus take of the intent of the Federal Trade Commission Act as amended, no question of abridgment of the petitioners' freedom of speech or of press arises. However, we may say that the constitutional inhibition of any such abridgment which the Commission's interpretation of the amendment to the statute at once involves, would so seriously threaten its validity as to justify rejection of the Commission's contention. Blodgett v. Holden, 275 U.S. 142, 148, 276 U.S. 594, 48 S.Ct. 105, 72 L.Ed. 206; United States v. Standard Brewery, 251 U.S. 210, 220, 40 S.Ct. 139, 64 L.Ed. 229; United States v. Delaware & Hudson Co., 213 U.S. 366, 407, 408, 29 S.Ct. 527, 53 L.Ed. 836; and United States v. Jin Fuey Moy, 241 U.S. 394, 401, 36 S.Ct. 658, 60 L.Ed. 1061.

The petitioner Force dealt in opinions and no more. Nor does the Commission alter their category by tabulating them statements of fact. They are theories or ideas, false, it may well be, but sincerely held none the less, and that, too, in a field of knowledge where even experts at times must be content with approximations to verity. To the situation here presented the words of Mr. Justice Holmes are apposite,—"Certitude is not the test of certainty. We have been cocksure of many things that were not so. * * * But while one's experience thus makes certain preferences dogmatic for oneself, recognition of how they came to be so leaves one able to see that others, poor souls, may be equally dogmatic about something else."[10] Surely Congress did not intend to authorize the Federal Trade Commission to foreclose expression of honest opinion in the course of one's business of voicing opinion. The same opinion, however, may become material to the jurisdiction of the Federal Trade Commission and enjoinable by it if, wanting in proof or basis in fact, it is utilized in

---

[8] In Perma-Maid Co. v. Federal Trade Commission, 121 F.2d 282, where a distributor of stainless steel cooking utensils procured some of the Force pamphlets for use of its salesmen in inclining prospective customers to stainless steel rather than aluminum ware, the Federal Trade Commission restrained the distributor's use of the pamphlets and its action was sustained by the Circuit Court of Appeals for the Sixth Circuit. The Perma-Maid case, involving as it does the use

of the pamphlets which Force publishes and distributes, well illustrates a permissible exercise of the Commission's jurisdiction and serves to point the pertinent distinction between that case and the present.

[9] Federal Trade Commission Act, September 26, 1914, 38 Stat. 717, 15 U.S.C.A. § 45.

[10] Natural Law (1918) 32 Harvard Law Review 40, 41.

the trade to mislead or deceive the public or to harm a competitor. Cf. Perma-Maid Co., Inc., v. Federal Trade Commission, 6 Cir., 121 F.2d 282.

The order of the Federal Trade Commission is set aside.