265 F.2d 327
 Salvatore COSENTINO, Regional Director of the Fourteenth Region of the National Labor Relations Board, for and on behalf of the National Labor Relations Board, Petitioner-Appellee,
v.
UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA, AFL-CIO, and Its Agent, J. Earl Welch, et al., Respondents-Appellants.
 No. 12518.
 United States Court of Appeals Seventh Circuit.
 April 10, 1959.
 
 Harold G. Talley, Alton, Ill., Francis X. Ward, Indianapolis, Ind., Michael M. Kinney, Wood River, Ill. (William A. McGowan, Indianapolis, Ind., on the brief), for appellant.
 Thomas J. McDermott, Assoc. Gen. Counsel, Winthrop A. Johns, Asst. Gen. Counsel, National Labor Relations Board, Washington, D. C. (Jerome D. Fenton, General Counsel, Jacques Schurre, Attorney, National Labor Relations Board, Washington, D. C.), for appellee.
 Before DUFFY, Chief Judge, and SCHNACKENBERG and PARKINSON, Circuit Judges.
 DUFFY, Chief Judge.
 
 
 1
 This is a secondary boycott case. Under Section 10(l) of the National Labor Relations Act, 61 Stat. 136, 29 U.S.C.A. § 141 et seq., the National Labor Relations Board petitioned the District Court for a temporary injunction enjoining and restraining respondents from engaging in a charged and alleged unfair labor practice, pending the hearing of such charge on the merits by the Labor Board.[1] After a hearing, the District Court, on August 21, 1958, entered Findings of Fact and Conclusions of Law and an Order granting temporary injunction. This appeal is from portions of the injunctional order.
 
 
 2
 The petition for an injunction was predicated on an amended charge by Midwest Homes, Inc. (Midwest) alleging United Brotherhood of Carpenters and Joiners of America, AFL-CIO (International) and its agent Welch, et al. had engaged in and were engaging in unfair labor practices proscribed by Section 8 (b) (4) (A) of the Act.
 
 
 3
 Midwest is engaged in Mattoon, Illinois and Erie, Pennsylvania, in the manufacture, sale and erection of prefabricated homes. Its carpenters at the Mattoon plant have been represented by Local 347 (Carpenters) since 1952; respondent Local 269 (Carpenters) is located at Danville, Illinois. Respondent Local 505 (Carpenters) is located at Litchfield, Illinois.
 
 
 4
 Andersen Corporation (Andersen) is a Minnesota corporation whose principal offices are located at Bayport, Minnesota, and is engaged in the manufacture and sale of wooden window units. For more than five years prior to the occurrences hereinafter narrated, Midwest has purchased and used window units manufactured by Andersen. The employees of Andersen are not members of International or of any local affiliated with International. Andersen's products do not bear the Union Label issued by International.
 
 
 5
 Under the collective bargaining agreement between Midwest and Local 347, the latter agreed to furnish the use of the Union Label of the United Brotherhood for the stamping of "all goods manufactured" by Midwest. The Union Label is a rubber stamp retained by the Union steward for the stamping of manufactured materials and sections before they leave the Midwest plant. The constitution of International provides that such labels shall be used solely in shops which "employ only members of the United Brotherhood" and that "it shall be the duty of the Steward to see that said label * * * shall not be placed on any manufactured article other than that which is made under the agreement."
 
 
 6
 United Brotherhood's constitution and laws require members of one local to secure a permit to work temporarily within the jurisdiction of another Local. Pursuant to this requirement, Midwest employees have customarily applied for and secured such work permits when assigned to erect a Midwest home within the jurisdiction of a sister Local.
 
 
 7
 On June 4, 1958, appellant Welch, a representative of International and Kingery, Business Agent for Local 347, visited Midwest's plant at Mattoon to ascertain whether Midwest was using nonunion mill work. When Midwest admitted it was using and for years had used windows manufactured by Andersen, Welch stated he was going to take the union label from Midwest adding that Midwest could have the label back when it ceased using Andersen's non-union windows. Thereafter, the two union agents obtained the label stamp from the Steward telling him in the presence of six to ten Midwest employees that they were "pulling" the label because of the use of Andersen windows.
 
 
 8
 At a meeting held July 12, 1958, Carpenter business agents in the area were instructed not to issue permits to Midwest's employees or furnish carpenters to work on Midwest's homes because Midwest's union label had been pulled. Two days later, Local 505 refused to issue a permit to erect a house at Litchfield. On July 17, Local 505 agreed to issue work permits, but warned Midwest's employees they would be fined, and their union books withdrawn if they tried to erect Midwest houses. After this threat Midwest's employees did not attempt to erect the Litchfield house.
 
 
 9
 At a meeting held July 18, Welch informed Midwest employees that the union label had been taken away from Midwest because it was using material which did not bear the union stamp, and warned Midwest employees they would be fined and have their union cards "jerked" if they continued to erect Midwest houses. Welch stated if Midwest would "get rid of" the "non-union mill work" the union label would be restored. After this meeting, Midwest employees refused to erect Midwest houses.
 
 
 10
 On July 21, Welch as president of the Union's State Council, advised all carpenters' subordinate unions in the state by letter that the union labels of Midwest and of another manufacturer of prefabricated buildings, Auburn Homes, Inc., had been withdrawn and that members of the International were not employed at Sheffield Door Company, a manufacturer of overhead doors. Welch requested that the letter be read in open union meetings. The District Court found that International withdrew its union label because of Midwest's use of window units manufactured by Andersen; that appellants refused to issue work permits to Midwest employees; that the object of the conduct of appellants was to "force or require Midwest, and other employers and persons, to cease using, selling, handling, transporting, or otherwise dealing in the products of, and to cease doing business with, Andersen, or any other producer, processor or manufacturer whose products do not bear the union label issued by * * * International." The Court further found a likelihood that appellants would repeat and continue their conduct unless restrained.
 
 
 11
 The District Court issued a temporary injunction pending final disposition of the proceeding before the Labor Board. Therein the respondents-appellants were enjoined from a) Ordering, directing, instructing, requesting or appealing to employees of Midwest to refuse to handle, work on, or install window units or other products manufactured by Andersen Corporation; b) Refusing to issue work permits to employees of Midwest; c) In any manner, such as by threats of union disciplinary action, refusal to issue work permits, etc. inducing or encouraging employees of Midwest or any other employer to engage in a strike or concerted refusal to use, manufacture, process or handle any goods, materials or commodities or perform any services where an object thereof is to force or require Midwest or any other employer to cease using, selling, handling, transporting, or otherwise dealing in the products of, or cease doing business with, Andersen Corporation or any other producer, processor or manufacturer whose products do not bear the union label issued by International.
 
 
 12
 The injunction was issued to restrain a secondary boycott in violation of Section 8(b) (4) (A) of the Act. Section 10(l) expresses the determination of Congress that unfair labor practices proscribed by Section 8(b) (4) (A) gave, or tended to give, rise to such serious interruptions to commerce as to require their discontinuance, pending adjudication by the Board.
 
 
 13
 The injunctive relief contemplated in Section 10(l) is interlocutory and is limited to such time as may expire before the Board's final disposition of the unfair labor practices charged. In order to justify such relief, there must be a finding by the District Court that there is reasonable cause to believe that a violation of the Act as charged, has been committed and that equitable relief would be just and proper. The District Court made such findings. On this appeal this Court is not called upon to decide whether in fact the charges are true.
 
 
 14
 On this appeal, the Union does not challenge subsection (a) of the injunction order, which enjoins respondents from a secondary boycott of the Andersen Corporation. Also, both parties agree that subsection (b) of the order may be amended. This provision restrained appellants from "Refusing to issue work permits to employees of Midwest Homes, Inc." The Board agrees that the following language may be added: "* * * where an object thereof is to force or require Midwest Homes, Inc. or any other employer or person to cease using, selling, handling, transporting or otherwise dealing in the products of, or to cease doing business with, Andersen Corporation or any other producer, processor, or manufacturer whose products do not bear the union label issued by United Brotherhood of Carpenters and Joiners of America, AFL-CIO."[2]
 
 
 15
 Respondents object to the provisions in subsection (c) of the injunction order claiming it deprives the Union of its property rights in the union label; that it deprives the Union of the right to issue work permits, and subjects the Union to the penalty of Brown-Olds Reimbursement Orders.[3]
 
 
 16
 The basic contention of respondents is the claim that the District Court erred in not limiting its 10(l) injunction order to enjoining respondents from 1) withholding the union label, and 2) refusing to issue work permits, where an object thereof is to force or require Midwest, or any other person or employee, to cease doing business with Andersen in violation of Section 8(b) (4) (A) of the Act. Respondents' real complaint is as to the scope of the temporary injunction.
 
 
 17
 Respondents rely heavily upon the recent Supreme Court case, Local 1976, United Broth. of Carpenters and Joiners of America, A. F. L. v. N. L. R. B., 1958, 357 U.S. 93, 78 S.Ct. 1011, 1016, 2 L.Ed. 2d 1186, and utilize several pages of their Reply Brief in quoting from the majority opinion, but we think the following quotation from that opinion is pertinent to the question before us: "* * * Congress' purpose was more narrowly conceived. It aimed to restrict the area of industrial conflict insofar as this could be achieved by prohibiting the most obvious, widespread, and, as Congress evidently judged, dangerous practice of unions to widen that conflict: the coercion of neutral employers, themselves not concerned with a primary labor dispute, through the inducement of their employees to engage in strikes or concerted refusals to handle goods. * * *"
 
 
 18
 In equity suits a district judge has a wide discretion to issue or withhold a temporary injunction, and ordinarily an appellate court will not interfere. Federal Trade Commission v. Rhodes Pharmacal Co., 7 Cir., 191 F.2d 744. The section we are considering provides: "* * * the district court shall have jurisdiction to grant such injunctive relief * * * as it deems just and proper, notwithstanding any other provision of law * * *." Such a grant of power by Congress to a district judge is a very broad one limited only by the exercise of sound legal discretion. Schauffler v. United Association of Journeymen, etc., 3 Cir., 218 F.2d 476, 480.
 
 
 19
 Respondents insist that the section was intended to provide a means for maintaining the status quo. We agree, but are of the view that the scope of the order as entered more effectively maintains the status quo than would an injunction of the more narrow scope urged by respondents.
 
 
 20
 Contrary to their contention, the record shows that respondents' conduct was in furtherance of International's general policy to discourage the use of non-union, unlabeled products regardless of source. When Welch visited Midwest, the fact that the non-union material happened to come from Andersen was incidental. Respondents' actions would have been the same regardless of the origin of the unlabeled material.
 
 
 21
 Furthermore, Welch's letter of July 21st to all subordinate Carpenters' Unions in the State of Illinois specifically mentioned another manufacturer of prefabricated buildings and that members of United Brotherhood were not employed at a named manufacturer of overhead doors.
 
 
 22
 As to respondents' argument that the injunction order subjects them to possible liability for the remission of permit fees under the rule of Brown-Olds, there is nothing in the order that requires respondent to continue the practice of requiring members of one Local working in the jurisdiction of another Local to obtain a work permit and to require a fee for such a permit. The court order was designed only to ban the use of respondents' self-imposed practice to boycott the unlabeled products of Andersen and others.
 
 
 23
 Subsection (b) of the injunction order should be modified by adding thereto the language hereinbefore quoted, as suggested by the Board.
 
 
 24
 As the record amply sustains the Court's finding as to "reasonable cause," the injunction order, as modified is
 
 
 25
 Affirmed.
 
 
 
 Notes:
 
 
 [1]
 Section 10(l), insofar as pertinent, provides that: "Whenever it is charged that any person has engaged in an unfair labor practice within the meaning of paragraph (4) (A), (B), or (C) of section 158(b) of this title, the preliminary investigation of such charge shall be made forthwith and given priority over all other cases except cases of like character in the office where it is filed or to which it is referred. If, after such investigation, the officer or regional attorney to whom the matter may be referred has reasonable cause to believe such charge is true and that a complaint should issue, he shall, on behalf of the Board, petition any district court of the United States * * * within any district where the unfair labor practice in question has occurred * * * for appropriate injunctive relief pending the final adjudication of the Board with respect to such matter. Upon the filing of any such petition the district court shall have jurisdiction to grant such injunctive relief or temporary restraining order as it deems just and proper, notwithstanding any other provision of law: * * *"
 
 
 [2]
 The Union objects to the words italicized
 
 
 [3]
 In the Brown-Olds case, 115 NLRB 594 (1956) the Board held where illegal hiring arrangements exist, either pursuant to a contract or a practice, the appropriate remedy required the reimbursement of all moneys, including initiation fees, dues, work permit fees, etc