**FEDERAL TRADE COMMISSION v. RHODES PHARMACAL CO., Inc., et al.**

**No. 10375.**

United States Court of Appeals
Seventh Circuit.

July 5, 1951.

---

William T. Kelley, Chief Counsel, James W. Cassedy, Associate General Counsel, Federal Trade Commission, and Alan B. Hobbes and James E. Corkey, all of Washington, D. C., for appellant.

Frank E. Gettleman, Arthur Gettleman, Edward Brodkey, Chicago, Ill., for appellees.

Before MAJOR, Chief Judge, and KERNER and FINNEGAN, Circuit Judges.

KERNER, Circuit Judge.

This is an appeal from a judgment dismissing an action brought under § 13(a) of the Federal Trade Commission Act, 15 U.S.C.A. § 53, to restrain defendants from the further dissemination of false advertisements representing that a certain proprietary drug product manufactured and sold by defendants is an effective remedy or treatment for arthritis and other diseases.

The complaint, after alleging that the Commission had issued an administrative complaint against defendants charging

them with having violated § 12 of the Act, averred that defendants have disseminated, and since issuance of the administrative complaint have persisted in disseminating, in interstate commerce, false advertisements in newspapers of general circulation, national in scope, to induce the purchase of "Imdrin"; that these advertisements are false and misleading in that they represent that "Imdrin" is a remarkable, amazing, sensational new discovery of scientific research, and is an adequate, effective and reliable treatment for all kinds of arthritis and rheumatism, and will arrest the progress of, correct the underlying causes of, and cure all kinds of arthritis and rheumatism, and will afford complete and immediate relief from the aches, pains and discomforts thereof.

The complaint further alleged that in fact "Imdrin," however taken, is not an adequate, effective or reliable treatment for, will not arrest the progress of, correct the underlying causes of, or cure any kind of arthritis or rheumatism, and will not afford complete or immediate relief from the aches, pains and discomforts thereof; that any effect of "Imdrin," when used by one suffering from any of the ailments mentioned, is due solely to the acetylsalicylic acid (commonly known as aspirin) and the manganese silicylate content in the preparation; that there are many cases of arthritis which may be cured completely if proper diagnosis and adequate treatment are received promptly; that the further dissemination of such false advertisements may cause immediate and irreparable injury to the public in that persons induced by such false advertisements to purchase "Imdrin" may delay proper treatments, and thereby suffer permanent and irreparable crippling; that various unavoidable delays in the proceedings before the Commission have been encountered, and that until a cease and desist order issued by the Commission becomes final, the dissemination of defendants' false advertising can be halted only by the granting of a temporary injunction.

The complaint was supported by affidavits of medical experts, distinguished members of the medical profession, specializing in the diagnosis, treatment and study of arthritis and related diseases. The affiants in these affidavits averred that they were in daily contact with people who suffer from arthritis, rheumatism and other similar ailments; they stated that they had had many conversations with different patients in which they were told of the various advertisements of proprietary medicines and what the patients understood from such advertisements, and were in a position to know what advertisements of so-called remedies for arthritis and rheumatism mean to persons suffering from diseases of this nature; that they had examined the advertisements here involved, and that such advertisements would mean to persons afflicted with various kinds of arthritis that "Imdrin" is a cure for such an ailment.

Defendants' answer, supported by affidavits of five physicians, denied that the advertisements were false. Additional affidavits were filed by the Commission, purporting to discredit the qualifications of the physicians whose affidavits the defendants had annexed to their answer.

The trial judge denied the injunction and dismissed the complaint because he was of the opinion that the verified pleadings and affidavits presented debatable questions which were not resolved by the supporting affidavits, and adjudged that "[W]here the equities of the complaint are fully and explicitly met by denial under oath, a preliminary injunction will not be granted." While that may be the rule in private disputes which do not involve the public interest, we think that in the instant case the court failed to apply the proper applicable legal principles.

■■ It is true, of course, that an appellate court will not ordinarily interfere with the action of a trial court either in granting or withholding an injunction, Hecht Co. v. Bowles, 321 U.S. 321, 64 S. Ct. 587, 88 L.Ed. 754, and Bowles v. Huff, 9 Cir., 146 F.2d 428, and will not reverse such an order unless it appears that there was a palpable misapplication of well-settled rules of law on the part of the trial

747 at top right corner

(redacted) at top left

judge, City of Chicago v. Fox Film Corp., 7 Cir., 251 F. 883, and Walling v. National Ice & Fuel Corp., 7 Cir., 158 F.2d 28. It will, however, reverse for failure to apply appropriate equitable and legal principles to the facts, Creedon v. Warner Holding Co., 8 Cir., 162 F.2d 115, and where an injunction is authorized by statute, it is enough if the statutory conditions are satisfied. Henderson v. Burd, 2 Cir., 133 F. 2d 515, 146 A.L.R. 714; Shadid v. Fleming, 10 Cir., 160 F.2d 752. In such cases courts go much further to give relief than they are accustomed to go when only private interests are involved. This is so because " * * * the standards of the public interest, not the requirements of private litigation, measure the propriety and need for injunctive relief * * *." Hecht Co. v. Bowles, 321 U.S. 321, 331, 64 S.Ct. 592.

At this point it is well to note that there is no question as to the component elements of "Imdrin," and no significant dispute exists as to what "Imdrin" will actually accomplish. It is clear from the affidavits filed by the Commission that a dose of "Imdrin" is the equivalent of one and one-half 5-grain aspirin tablets; that aspirin is the common name of a substance which is described chemically as acetylsalicylic acid, and that the action of manganese salicylate is essentially the same as aspirin since both depend for their action upon their salicylate content, and that these ingredients are limited in their effect to such temporary and partial relief of pain and fever as may be afforded in the individual case; that the other ingredients, calcium succinate, thiamin chloride and caffeine, which are present in "Imdrin," are not considered to be of any therapeutic value in the treatment of or in relieving the symptoms and manifestations of any kind of arthritis or related condition. It is also worthy of note that the medical affidavits of the defendants do not in any material respect challenge the facts alleged in the affidavits submitted by the Commission. In fact, defendants' affiant, Dr. Weisberg, stated: "The preparation Imdrin includes in its formula acetylsalicylic acid and manganese salicylate and these products may be regarded as its most active ingredients, and those which confer on it analgesic properties."

To protect the purchasing public against deceptive methods and misrepresentations by which purchasers are deceived, is in the public interest, International Art Co. v. Federal Trade Commission, 7 Cir., 109 F.2d 393. In determining whether a proceeding is in the public interest, the Commission exercises a broad discretion, Federal Trade Commission v. Klesner, 280 U.S. 19, 29, 50 S.Ct. 1, 74 L.Ed. 138, and each case must be determined on its own facts, Federal Trade Commission v. Beech-Nut Co., 257 U.S. 441, 42 S.Ct. 150, 66 L.Ed. 307. The Commission acts solely in the public interest, and the steps required for invoking the jurisdiction of the District Court, in an effort to protect the public from false advertisements of drugs and foods for the period during which the Commission's administrative proceedings are in progress, are described in § 13(a) of the Act, which this court has held was a necessary part of the plan to prevent fraud and fraudulent commerce through fraudulent advertisements, and was written for the purpose of preventing the ineffectuality of proceedings before the Commission due to the offender's collecting the spoils incident to improper practices. Federal Trade Commission v. Thomsen-King & Co., 7 Cir., 109 F.2d 516. That section empowers the Commission to bring suit for an injunction "Whenever the Commission has reason to believe" (1) that any person, partnership, or corporation is engaged in the dissemination of any false advertisement of a drug in violation of § 12, and (2) that it would be "to the interest of the public" to enjoin such dissemination pending final disposition of an administrative proceeding pursuant to the provisions of § 5, and it provides that "Upon proper showing a temporary injunction or restraining order shall be granted without bond."

It is true that there is nothing in the Act or in its legislative history to indicate what should be considered as a "proper showing." We think, however, that it is fair to say that all the Commission had to show was a justifiable basis

for believing, derived from reasonable inquiry or other credible information, that such a state of facts probably existed as reasonably would lead the Commission to believe that the defendants were engaged in the dissemination of false advertisements of a drug in violation of the Act. Le Baron v. Los Angeles Building & Construction Trades Council, D.C., 84 F.Supp. 629. See also Federal Trade Commission v. Koch, 3 F.T.C. Statutes & Decisions, 720. The District Court was not required to find the charges made to be true, but to find reasonable cause to believe them to be true. Shore, for and on Behalf of N.L.R.B. v. Building & Construction Trades Council, 3 Cir., 173 F.2d 678, 682, 8 A.L.R.2d 731. This is to say, in the instant case, the court had only to resolve the narrow issue of whether there was "reasonable cause" to believe that the alleged violation had taken place. Compare Bowles v. Montgomery Ward & Co., 7 Cir., 143 F.2d 38, 42. The judgment must be reversed and the cause remanded to the District Court for that determination. It is so ordered.

MAJOR, Chief Judge (dissenting).

I would affirm the order under attack. Admittedly, the District Court was vested with a discretion as to the allowance or denial of the injunction and, in my view, it cannot be said that there was a manifest abuse of such discretion. The statute which authorizes the Commission to apply for an injunction contains a limitation not found, so far as I am aware, in any statutory provision relating to other administrative agencies. Under § 13(a) 15 U.S.C.A. § 53, two conditions are attached: first, the Commission is entitled to seek an injunction only when it "has reason to believe", and second, it is entitled to the issuance of an injunction only upon a "proper showing." Compliance with the first condition seems to be jurisdictional because in its absence the Commission is not entitled to assert its claim to an injunction. The court in the instant case evidently recognized that the Commission had complied with this condition because it took jurisdiction of the cause and had a hearing upon the complaint for an injunction and defendants' answer thereto.

As pointed out in the majority opinion, we are in the dark as to what is meant by a "proper showing," but evidently the terminology vests in the court a discretion subject to review only for manifest abuse. In the exercise of that discretion the court had a right to take into consideration that admittedly the involved product had no harmful or deleterious effect on those who used it. Also, there was pending before the Commission a proceeding under § 5 of the Federal Trade Commission Act, wherein the contentions of the respective parties after a full hearing could be decided on their merits. In fact, this hearing had progressed to the point where a decision by the Commission could be made at an early date. As the District Court stated, "The Commission has concluded its case and the court is advised that in a matter of six weeks, the case will be concluded. It appears therefore, that if diligently prosecuted, there will be an early determination of the merits." Furthermore, at the time of argument of the instant matter in this court, the hearing before the Commission had been concluded. Thus, the matter on its merits awaits a decision by the Commission. The complaint in the instant matter was not filed until almost two years after the proceeding was instituted before the Commission. I have serious doubt if the statute contemplates the issuance of an injunction under such circumstances and, in any event, the long delay in making application for an injunction and the fact that a decision by the Commission on the merits could shortly be expected, were matters which the District Court might properly and evidently did take into consideration in the exercise of its discretion to deny the same.