**FEDERAL TRADE COMMISSION, Petitioner-Appellant,**

v.

**NATIONAL COMMISSION ON EGG NUTRITION, Respondent-Appellee.**

No. 74-2043.

United States Court of Appeals, Seventh Circuit.

Argued April 5, 1975.

Decided May 15, 1975.

Rehearing Denied June 17, 1975.

TONE, Circuit Judge.

The National Commission on Egg Nutrition (NCEN), a private, not-for-profit corporation composed of representatives of various associations of egg producers throughout the United States, has caused to be published and broadcast statements, in the form of paid advertisements, representing in substance that there is no scientific evidence that eating eggs increases the risk of heart disease or a heart attack. The Federal Trade Commission filed an administrative complaint against NCEN alleging that these statements were false and in violation of sections 5 and 12 of the Federal Trade Commission Act, 15 U.S.C. §§ 45 and 52, and sought from the District Court a temporary injunction under section 13(a) of the Act, 15 U.S.C. § 53(a), restraining the continuation of the advertising pending completion of the administrative proceeding. Before the District Court, the Commission offered substantial evidence that there is a medical controversy about the subject and considerable expert opinion based on experimental evidence showing a correlation, and possibly a causal connection, between high levels of dietary cholesterol resulting from eating eggs and other foods with a high cholesterol content and increased risk of heart disease. The District Court held that it had jurisdiction notwithstanding NCEN's claim that it was not subject to the Act, but denied the application on the ground that the equitable conditions required for issuance of an injunction under section 13(a) of the Act, 15 U.S.C. § 53(a), had not been met. We reverse that court's order and direct that an injunction be entered.

Calvin J. Collier and Karl H. Buschmann, F. T. C., Washington, D. C., James R. Thompson, U. S. Atty., and Gary L. Starkman, Asst. U. S. Atty., Chicago, Ill., for petitioner-appellant.

James L. Fox, Chicago, Ill., for respondent-appellee.

Before FAIRCHILD, Chief Judge, and CUMMINGS and TONE, Circuit Judges.

I.

We agree with the District Court that the Commission had jurisdiction over NCEN and the statements in question. Although NCEN is a nonprofit corporation, it was formed to promote "the general interests of the egg industry," according to its articles of incorporation and bylaws. Thus, it comes

within the scope of section 4 of the Act, 15 U.S.C. § 44, which defines "corporation" as "any company . . . which is organized to carry on business for its own profit or that of its members . . . .." See Community Blood Bank of Kansas City Area, Inc. v. F. T. C., 405 F.2d 1011 (8th Cir. 1969), where the court interpreted the legislative history of this section, stating:

" . . . Congress did not intend to provide a blanket exclusion of all non-profit corporations, for it was also aware that corporations ostensibly organized not-for-profit, such as trade associations, were merely vehicles through which a pecuniary profit could be realized for themselves or their members." 405 F.2d at 1017.

In holding that the Blood Bank was a solely charitable enterprise, the Eighth Circuit distinguished the line of cases following F. T. C. v. Cement Institute, 333 U.S. 683, 68 S.Ct. 793, 92 L.Ed. 1010 (1948), and Fashion Originators' Guild of America v. F. T. C., 312 U.S. 457, 61 S.Ct. 703, 85 L.Ed. 949 (1941), explaining:

"It is evident, however, that the organizations in the above cases were designed to and did in fact bring together firms having common business concerns and such organizations or their members derived a profit over and above the ability to perpetuate or maintain their existence." 405 F.2d at 1019.

See also National Harness Mfrs.' Ass'n v. F. T. C., 268 F. 705 (6th Cir. 1920). In the instant case, there is sufficient evidence to support the District Court's finding that NCEN was organized for the profit of the egg industry, even though it pursues that profit indirectly. The clear purpose of the statements in issue in this case is to encourage the consumption of eggs by allaying fears the public may have about their high cholesterol content. Also, given the nature of the pronouncements in question, the District Court could properly conclude that they were advertisements within the meaning of that term as used in the Act, because they were representations concerning the qualities of a product and promoting its purchase and use. See Koch v. F. T. C., 206 F.2d 311, 317–318 (6th Cir. 1953); compare Scientific Mfg. Co. v. F. T. C., 124 F.2d 640, 643–645 (3rd Cir. 1941).

## II.

As the District Court recognized, the Commission invoked section 13(a) as the basis for the issuance of a temporary injunction. We now turn, therefore, to the showing the Commission must make in order to receive injunctive relief under that subsection.

Section 13 of the Act consists of two different grants of authority to the Commission to seek injunctions against violations of the Act. Section 13(a) provides in substance that "[w]henever the Commission has reason to believe" that a corporation is engaged in dissemination of materially misleading advertising intended to induce the purchase of items of food, in violation of section 12 of the Act, and further has reason to believe that enjoining that conduct "would be to the interest of the public," the Commission is authorized to bring suit in a federal district court for injunctive relief, and "[u]pon [a] proper showing a temporary injunction . . . shall be granted . . . .." By contrast, section 13(b) is a general grant of authority to seek injunctions "[w]henever the Commission has reason to believe . . . that any . . . corporation . . . is violating . . . any provision of law enforced by the Federal Trade Commission," and provides that "[u]pon a proper showing that, *weighing the equities and considering the Commission's likelihood of ultimate success,* such action would be in the public interest, . . . a preliminary injunction may be granted." (Emphasis added.)

■ Congress added subsection (b) in 1973, leaving subsection (a) unchanged. By providing the traditional equity standards italicized in the above quota-

tion and the permissive "may" in (b), while leaving (a) without those standards and with its peremptory "shall," Congress indicated an intention that those standards be applied in proceedings under (b) but not in those under (a), and no intention that the judicial interpretations of (a) should be affected by the amendment. This inference is not refuted by the somewhat ambiguous legislative history of the amendment. Accordingly, our decision in F. T. C. v. Rhodes Pharmacal Co., 191 F.2d 744 (7th Cir. 1951), remains the law and is controlling in this case. We there held that the following standard was applicable under subsection (a):

> " . . . all the Commission had to show was a justifiable basis for believing, derived from reasonable inquiry or other credible information, that such a state of facts probably existed as reasonably would lead the Commission to believe that the defendants were engaged in the dissemination of false advertisements . . . in violation of the Act . . .. This is to say, in the instant case, the court had only to resolve the narrow issue of whether there was 'reasonable cause' to believe that the alleged violation had taken place." 191 F.2d at 747–748.

Under this standard, the Commission in the case at bar was entitled to temporary injunctive relief against NCEN's advertising statements to the effect that there was "no scientific evidence" of any relationship between dietary cholesterol intake resulting from eating eggs and increased risk of heart disease. The District Court explicitly found that the Commission had demonstrated that it had reason to believe NCEN's advertisements to be materially misleading. The Commission also showed that it believed an injunction would be in the best interest of the public, a statement which the District Court credited to the extent that more people were likely to be misled if the pronouncements were permitted to continue. It was error for the District Court to go further than the statutory requirements, which had been satisfied according to *Rhodes,* by requiring the Commission to justify its request for an injunction on the basis of a balancing of the equities and the likelihood of ultimate success, the traditional equity standards prescribed in subsection (b).

### III.

NCEN argues that the issuance of an injunction would at least raise a serious First Amendment question. As Chief Judge Fairchild's concurring opinion suggests, the First Amendment is not "wholly irrelevant if government selectively seeks to prohibit commercial advertising because it espoused one side of a genuine controversy." Cf. Pittsburgh Press Co. v. Human Relations Commission, 413 U.S. 376, 384–389, 93 S.Ct. 2553, 37 L.Ed.2d 669 (1973); Barrick Realty, Inc. v. City of Gary, 491 F.2d 161, 163–164 (7th Cir. 1974); compare Breard v. Alexandria, 341 U.S. 622, 71 S.Ct. 920, 95 L.Ed. 1233 (1951). NCEN has done more than espouse one side of a genuine controversy, however. It has made statements denying the existence of scientific evidence which the record clearly shows does exist. These statements are, therefore, false and misleading. "There is no constitutional right to disseminate false or misleading advertisements." E. F. Drew & Co. v. F. T. C., 235 F.2d 735, 740 (2d Cir. 1956). The First Amendment problem suggested above is therefore not before us.

### IV.

Regardless of the reach of the First Amendment in this area, we think the injunction should not go so far as to prohibit NCEN from making a fair presentation of its side of the controversy. NCEN should, as the Commission contends, be enjoined from disseminating in commerce or by mail advertising containing statements to the effect that there is no scientific evidence that increased intake of dietary cholesterol resulting from eating eggs increases the

risk of heart disease or attendant or related conditions or other statements tending to misrepresent the state of scientific evidence on the subject in question. The injunction should not, however, prohibit NCEN from stating that there is scientific evidence supporting the theory that dietary cholesterol intake is not harmful, or from describing that evidence, provided that it also states that there is substantial contrary evidence.

In order to avoid further delay, we are directing that an injunction in the form appearing in the Appendix to this opinion * be entered by the District Court on remand.

Reversed and remanded with directions.

FAIRCHILD, Chief Judge (concurring).

The material involved consists of statements of position with respect to a controversial issue. It is deemed advertising because its dissemination is caused by those whose profit interests are served by the view espoused.

We are in an area of difficulty in considering whether and to what extent the First Amendment protects such material. It is clear that "purely commercial advertising" is treated differently from other communication of information and opinion in terms of applicability of the First Amendment. Valentine v. Chrestensen, 316 U.S. 52, 62 S.Ct. 920, 86 L.Ed. 1262 (1942). Compare, Pittsburgh Press Co. v. Human Rel. Comm'n., 413 U.S. 376, 384, 93 S.Ct. 2553, 37 L.Ed.2d 669 (1973) with New York Times v. Sullivan, 376 U.S. 254, 266, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). See also, Breard v. Alexandria, 341 U.S. 622, 71 S.Ct. 920, 95 L.Ed. 1233 (1951). I question whether the cases mean that the First Amendment is wholly irrelevant if government selectively seeks to prohibit commercial

advertising because it espoused one side of a genuine controversy.

Mr. Justice Brennan has recently observed:

" . . . while it is possible that commercial advertising may be accorded *less* First Amendment protection than speech concerning political and social issues of public importance, compare Valentine v. Chrestensen, 316 U.S. 52, 62 S.Ct. 920, 86 L.Ed. 1262 (1942), with Schneider v. State, 308 U.S. 147, 60 S.Ct. 146, 84 L.Ed. 155 (1939), and Breard v. City of Alexandria, 341 U.S. 622, 71 S.Ct. 920, 95 L.Ed. 1233 (1951), with Martin v. City of Struthers, 319 U.S. 141, 63 S.Ct. 862, 87 L.Ed. 1313 (1943), it is 'speech' nonetheless, often communicating information and ideas found by many persons to be controversial." Lehman v. City of Shaker Heights, 418 U.S. 298, 314, 94 S.Ct. 2714, 2723, 41 L.Ed.2d 770 (Brennan, J., dissenting) (Emphasis in original, footnote omitted).

Like political speech, the purveyor of a commercial advertisement has an interest in expression, and the mere fact that government seeks to regulate advertising bespeaks the interest the recipients have in receiving the message. See Note, Freedom of Expression in a Commercial Context, 78 Harv.L.Rev. 1191 (1965). Most importantly, society, as a whole, has a substantial interest in the free interplay of opinion when an advertisement addresses a matter of current public debate.

When we are dealing with a genuine controversy, I do not think that mere reason to believe that a statement is false or misleading is a sufficient basis for an injunction. I conclude that the First Amendment at least requires a higher standard. I can, however, concur in ordering a limited injunction in this

---

* NCEN has moved for leave to supplement the record with copies of advertisements published by it shortly before and after the oral argument in this court. While we would ordinarily not consider evidence that was not before the District Court, we grant the motion, because we are framing the temporary injunction, and the recent advertising bears on the nature of the provisions that should be included in that injunction.

case because I consider that it has been demonstrated that the particular statements enjoined are misleading.

## APPENDIX

### Injunction Order

Petitioner, the Federal Trade Commission, having invoked the authority of this court pursuant to 15 U.S.C. § 53(a) for the purpose of temporarily enjoining the respondent from disseminating advertisements which the Commission has reason to believe violate section 12 of the Federal Trade Commission Act, 15 U.S.C. § 52; the court hereby finds as follows:

The court has jurisdiction over the subject matter and the respondent.

Eggs are a "food" as defined by 15 U.S.C. § 55(b).

The Federal Trade Commission has made a proper showing that it has reason to believe that the respondent's advertisements for eggs which have been disseminated in commerce or through the United States mails were false in violation of 15 U.S.C. § 52.

The Federal Trade Commission has made a proper showing that the issuance of a temporary injunction against respondent's continued dissemination of advertisements which the Commission had reason to believe were false, pending completion of its administrative proceeding with respect to respondent, would be in the public interest.

It is therefore ordered that respondent, National Commission on Egg Nutrition, is forthwith enjoined from disseminating or causing the dissemination of any advertisement by means of the United States mails or by any means in commerce, as "commerce" is defined in the Federal Trade Commission Act, which directly or indirectly:

1. Represents that there is no scientific evidence that consuming eggs, even in large quantities, increases the risk of heart attacks, heart or artery disease, or any attendant condition;

2. Represents the insignificance of the available scientific evidence that the consumption of eggs may increase the risk of heart attacks, heart or artery disease, or any attendant condition, or represents that there is overwhelming scientific evidence or otherwise misrepresents the amount of scientific evidence, if any, that eating eggs does not increase the risk of heart attacks, heart or artery disease, or any attendant condition;

3. Represents that there exists, or describes, scientific evidence which supports the theory that eating eggs does not increase or in any way decreases the risk of heart attacks, heart or artery disease, or attendant conditions, unless such representation is accompanied by a statement that this theory and its supporting evidence are the subject of considerable scientific controversy, and there is much evidence to the contrary.

It is further ordered that respondent shall:

Distribute or mail a copy of this order, within 30 days from the date of this order, to each of its members and to all persons, corporations, associations or other entities to which it has provided advertising materials for publication or republication and which contain any of the claims which respondent is enjoined by this order from making;

Furnish petitioner, within 30 days from the date of this order, with a list of all members, persons, corporations or other entities to whom it has furnished copies of this order as required above; and

Notify the Commission at least 30 days prior to any proposed change in NCEN, such as dissolution, emergence of a successor corporation, or any other change in the corporation which may affect compliance with obligations arising out of this order.

This order shall continue in effect until the pending complaint against respondent by petitioner Federal Trade Commission (F.T.C. Docket No. 8987) is either dismissed by petitioner or until a

final order issued by petitioner against respondent in that matter becomes final as defined by section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, unless sooner vacated or modified by this court.