JUSTICE MEJDA
 

 delivered the opinion of the court:
 

 Plaintiff, the People of the State of Illinois ex rel. Neil E Hartigan, Attorney General, appeals from the judgment of the circuit court dismissing with prejudice the amended complaint for failing to state a cause of action under the Consumer Fraud and Deceptive Business Practices Act (Ill. Rev. Stat. 1981, ch. 121½, par. 261 et seq.). The issues presented for review are whether the circuit court erred in dismissing both counts of the amended complaint and whether the first amendment precludes the instant action. For the reasons which follow, we reverse the judgment of the circuit court.
 

 Because the judgment was entered on the allowance of the motion to dismiss filed by defendants, Maclean Hunter Publishing Corporation and National Market Reports, Inc., all facts properly pleaded in the amended complaint must be taken as true for purposes of review. (See Fitzgerald v. Chicago Title & Trust Co. (1978), 72 Ill. 2d 179, 187, 380 N.E.2d 790.) The standard of review of the allowance of a motion to dismiss is that “a cause of action should not be dismissed on the pleadings unless it clearly appears that no set of facts can be proved which will entitle plaintiffs to recover.” (72 Ill. 2d 179, 187, 380 N.E.2d 790.) The amended complaint was in two counts. Count I alleged that defendants had violated the Illinois Consumer Fraud and Deceptive Business Practices Act by publishing, compiling and distributing a manual of vehicle pricing information entitled “Red Book.” The amended complaint contended that defendants have violated the act by falsely advertising that “Red Book” contains “official used car valuations,” that the information contained in “Red Book” is “complete,” “current,” “dependable,” “impartial,” “accurate,” and “reliable” and that “Red Book” provides “average finance,” “average wholesale,” and “average retail” values. The amended complaint also alleged that “Red Book” purports to be accurate for Illinois as well as 17 other States, but in fact reports inaccurate, unrealistically low, and misleading values when used by Illinois consumers. The amended complaint alleged additional violations of the act in the failure to base valuations on thorough studies of the relevant used car market, the failure to inform subscribers and the public that “Red Book” does not report actual market values, the failure to inform subscribers and the public that valuations reported in “Red Book” are merely subjective estimates, and the failure to compile and utilize sufficient information from which accurate vehicle valuation data can be derived. Count I concluded with a prayer for an injunction against the publication of “Red Book” and for other relief.
 

 Count II charged defendants with violations of the Uniform Deceptive Trade Practices Act (Ill. Rev. Stat. 1981, ch. 121½, par 311 et seq.), as incorporated by reference into the Consumer Fraud and Deceptive Business Practices Act (Ill. Rev. Stat. 1981, ch. 121½, par. 262). The asserted factual basis for the allegations of count II was the same conduct alleged in count I.
 

 Section 2 of the Consumer Fraud and Deceptive Business Practices Act provides that:
 

 “Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the ‘Uniform Deceptive Trade Practices Act,’ *** in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby. In construing this section consideration shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5(a) of the Federal Trade Commission Act.” (Ill. Rev. Stat. 1981, ch. 121½, par. 262.)
 

 Section 2 of the Uniform Deceptive Trade Practices Act provides in pertinent part that:
 

 “A person engages in a deceptive trade practice when, in the course of his business, vocation or occupation, he: * * *
 

 (2) causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of goods or services;
 

 (3) causes likelihood of confusion or of misunderstanding as to affiliation, connection or association with or certification by another;
 

 (4) uses deceptive representations or designations of geographic origin in connection with goods or services;
 

 (5) represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have ***; * * *
 

 (12) engages in any other conduct which similarly creates a likelihood of confusion or of misunderstanding.
 

 In order to prevail in an action under this Act, a plaintiff need not prove competition between the parties or actual confusion or misunderstanding.” (Ill. Rev. Stat. 1981, ch. 121½, par. 312.)
 

 In granting the motion to dismiss the amended complaint, the circuit court held that the defendants are not in the used car trade and therefore their conduct does not violate the statute. The circuit court also stated that, if allowed to proceed, the instant action would raise “First Amendment implications.”
 

 Opinion
 

 The first issue for review is whether the complaint states a cause of action under the Consumer Fraud and Deceptive Business Practices Act (the Act). The threshold question in our analysis is whether the statute applies to the case sub judice. Defendants contend that the circuit court correctly held that defendants’ alleged misrepresentations are not acts in the conduct of their trade or commerce as publishers because “Red Book” does not advertise the sale of any particular cars. This analysis is not persuasive. Section 2 prohibits unfair and deceptive practices “in the conduct of any trade or commerce.” (Emphasis added.) (Ill. Rev. Stat. 1981, ch. 121½, par. 262.) Section 1(f) defines “trade or commerce” as “the advertising, offering for sale, sale, or distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value wherever situated, and shall include any trade or commerce directly or indirectly affecting the people of this State.” (Ill. Rev. Stat. 1981, ch. 121½, par. 261(f).) As our supreme court has indicated, “[t]his broad language evidences an intent that the Act have correspondingly broad applicability.” (Scott v. Association for Childbirth at Home, International (1981), 88 Ill. 2d 279, 284, 430 N.E.2d 1012.) We conclude that the business of publishing “Red Book” is a trade or commerce within the meaning of the Act because defendants advertise, sell and distribute “Red Book.” Defendants’ argument would have us focus on the used-car trade, in which defendants are not alleged to engage. However, the deceptions which plaintiff has averred pertain to defendants’ conduct in the business of publishing, advertising and distributing “Red Book.” Defendants’ argument is therefore inapposite to the instant inquiry.
 

 Defendants rely on Scientific Manufacturing Co. v. FTC (3d Cir. 1941), 124 E2d 640, for the proposition that “the publication, sale and distribution of matter concerning an article of trade by a person not engaged or financially interested in commerce in that trade is not an unfair or deceptive act or practice ***.” (124 F.2d 640, 644.) Because of the importance which the trial court placed upon this case we will discuss it in detail.
 

 “The Scientific Mfg. Co., which was in fact the alter ego of one Force, was engaged in the publication and sale of pamphlets. Force, a chemist and pharmacist, held unorthodox beliefs about the dangers inherent in the use of aluminium cooking utensils. In fact, he attributed to the use of aluminum utensils practically all the ills which beset mankind. These ideas he incorporated into pamphlets which were sold in interstate commerce. While the pamphlets were sold generally to the public, certain manufacturers and distributors of non-aluminum cooking utensils displayed an especial interest in Force’s theories. About 20% of these pamphlets came into the hands of these manufacturers and distributors who made use of the pamphlets to stimulate sales of their products. The Commission found that the representations made in the pamphlets were false, misleading and disparaging, and that through their sale Force was supplying an instrumentality by means of which uninformed and unscrupulous manufacturers and distributors were able to deceive members of the public, thereby inducing them to purchase non-aluminum utensils. The Commission concluded that the sale of Force’s pamphlets constituted unfair and deceptive acts and practices in commerce, and a cease and desist order was issued. Upon petition for review, this court set aside the order of the Commission, holding such order to be beyond the powers granted it under the Act.” (Globe Cardboard Novelty Co. v. FTC (3d Cir. 1951), 192 F.2d 444, 447.)
 

 The court in Globe Cardboard found the Scientific case distinguishable in that “Force was in the business of disseminating ideas. His ideas, while unorthodox and no doubt false, were sincerely held by him. *** The use of the pamphlet for the sale of merchandise was a clear perversion of its primary function.” (192 F.2d 444, 447.) In the instant case, defendants’ advertising is not designed to promote ideas qua ideas, but rather is intended to further sales of “Red Book” by inducing prospective purchasers to believe that the information which “Red Book” contains is based on extensive market research of actual transactions. Thus, unlike the petitioner in Scientific defendants here derive a direct financial benefit from their allegedly deceptive advertising. Where the dissemination of ideas is so invested with a financial interest, the promulgation of those ideas may constitute an unfair or deceptive trade practice. For example, false representations concerning the authorship of various encyclopedia entries were held to be properly forbidden in FTC v. Standard Education Society (1937), 302 U.S. 112, 82 L. Ed. 141, 58 S. Ct. 113. The issue there, as here, was not the truth or falsity of the publication’s contents, but the truth or falsity of the publisher’s statements promoting those contents. Similarly, in FTC v. National Commission on Egg Nutrition (7th Cir. 1975), 517 F.2d 485, representations by a trade association calculated to allay fears concerning the high cholesterol content of eggs and thereby encourage the consumption of eggs, were held to be enjoin-able since the trade association was “organized for the profit of the egg industry, even though it pursues that profit indirectly.” (517 F.2d 485, 488.) We conclude that defendants’ advertisements of “Red Book” are not merely the expressions of ideas but are representations concerning the qualities of a product and promoting its use, and are consequently within the ambit of the Act. See 517 F.2d 485, 488.
 

 Defendants next rely on section 10b of the Act, which provides in relevant part:
 

 “Nothing in this Act shall apply to: * * *
 

 (3) Acts done by the publisher, owner, agent, or employee of a newspaper, periodical or radio or television station in the publication or dissemination of an advertisement, when the owner, agent or employee did not have knowledge of the false, misleading or deceptive character of the advertisement, did not prepare the advertisement, or did not have a direct financial interest in the sale or distribution of the advertised product or service ***.” (Ill. Rev. Stat. 1981, ch. 121½, par. 270b (3).)
 

 This exception appears intended to exempt from the application of the Act the transmission by the specified communications media of advertisements prepared by third parties. Moreover, by its own terms, the section does not apply to defendants because they clearly have a direct financial interest in the sale of “Red Book.”
 

 The next issue for review is whether count I of the amended complaint states a cause of action under the Consumer Fraud and Deceptive Business Practices Act, without reference to the Uniform Deceptive Trade Practices Act.
 

 “The Consumer Fraud Act provides an even broader consumer protection than does the common law action of fraud or negligent misrepresentation since the Act also prohibits any ‘deception’ or ‘false promise.’ [Citations.] It has been stated that there is a clear mandate from the legislature to the courts to use the Consumer Fraud Act to the utmost degree to eradicate all forms of deception and unfair business practices.” (Buzzard v. Bolger (1983), 117 Ill. App. 3d 887, 893, 453 N.E.2d 1129.)
 

 Section 2 of the Consumer Fraud and Deceptive Business Practices Act declares unfair methods of competition and unfair or deceptive acts or practices to be unlawful. (Ill. Rev. Stat. 1981, ch. 121½, par. 262.) It is important to distinguish between the proscription against unfair competition (which has been held to codify the common law of unfair competition, see Brooks v. Midas-International Corp. (1977), 47 Ill. App. 3d 266, 361 N.E.2d 815) and the prohibition against unfair or deceptive acts or practices (which has been held to provide greater protection than the common law actions (see Buzzard v. Bolger (1983), 117 Ill. App. 3d 887, 893, 453 N.E.2d 1129)). The allegations in the instant case concern the latter type of conduct.
 

 The acts which plaintiff alleges to violate the Act may be classified into two categories: allegations concerning the advertising of “Red Book” and allegations concerning the contents of “Red Book.” These two categories will be discussed in turn.
 

 The amended complaint alleged that the following statements promulgated by defendants on behalf of “Red Book” are false: that “Red Book” contains “official used car valuations” which are “compíete,” “dependable,” “impartial,” “accurate,” and “current”; that “Red Book” is the “recognized authority for car dealers, banks, finance companies and insurance companies”; and that “Red Book” provides “average” finance, wholesale and retail values. Our supreme court has indicated that
 

 “the phrases ‘unfair methods of competition’ and ‘unfair *** acts or practices *** in the conduct of any trade or commerce,’ *** [have] a venerable history of interpretation and definition by the Federal courts, and now can be said to have a well-settled meaning in Federal trade-regulation law. ***
 

 The terms ‘unfair practice’ and ‘unfair methods of competition’ are inherently insusceptible of precise definition. As we recognized when the issue of the vagueness of section 2 was first before us, effective regulation requires that the concept be flexible, defined on a case-by-case basis, ‘in view of the futility of attempting to anticipate and enumerate all the [unfair] methods’ and practices that fertile minds might devise.” (Scott v. Association for Childbirth at Home, International (1981), 88 Ill. 2d 279, 290, 430 N.E.2d 1012.)
 

 The Act provides for reference to Federal decisions under the Federal Trade Commission Act (15 U.S.C. sec. 45 (1973)) (Ill. Rev. Stat. 1981, ch. 121½, par. 262) and the appellate court has applied the same standard utilized by the Federal courts to determine whether advertising is deceptive.
 

 “Under section 5(a) [of the Federal Trade Commission Act (15 U.S.C. sec. 45 (1973))], an advertisement has been held to be deceptive on its face if it ‘creates the likelihood of deception or [has] the capacity to deceive.’ (Montgomery Ward & Co. v. Federal Trade Com. (7th Cir. 1967), 379 F.2d 666, 670.) ***
 

 ‘It is well established that the test to be used in interpreting advertising is the net impression that it is likely to make on the general populace. [Citations.] It is immaterial that a given phrase considered technically may be construed so as not to constitute a misrepresentation or that a deception is accomplished by innuendo rather than by affirmative misstatement. ***’ ” Williams v. Bruno Appliance & Furniture Mart, Inc. (1978), 62 Ill. App. 3d 219, 222, 379 N.E.2d 52 (“bait and switch” advertising held to violate section 2 of the Act).
 

 In Duhl v. Nash Realty Inc. (1981), 102 Ill. App. 3d 483, 429 N.E.2d 1267, allegations of false representations made by a realtor concerning the value of property placed for sale were held to state a cause of action under the Act. In Fitzgerald v. Chicago Title & Trust Co. (1978), 72 Ill. 2d 179, 380 N.E.2d 790, a title insurance company’s alleged failure to disclose to purchasers of title insurance policies the payment of rebates to financial institutions was held to state a cause of action under the Act. In American Buyers Club of Mt. Vernon, Illinois, Inc. v. Honecker (1977), 46 Ill. App. 3d 252, 361 N.E.2d 1370, the court held that false representations that members of a buyers’ club could purchase a specified brand of sewing machine for a substantial discount were actionable under the Act. The thrust of these cases is that a cause of action is stated under the Act by an allegation of any false promise or deception, not limited to existing facts and without regard to the good or bad faith of the defendant in making the false statements (Duhl v. Nash Realty Inc. (1981), 102 Ill. App. 3d 483, 494, 429 N.E.2d 1267); the focus of our inquiry is therefore the deceptive capacity of the statements at issue.
 

 In the instant case, the defendants’ representations that “Red Book” is an “official” and “recognized authority,” if shown to be false, would constitute a deception within the meaning of the Act because these statements could mislead the public by creating a false impression of authority or expertise. (See Goodman v. FTC (9th Cir. 1957), 244 E2d 584, 594-95, and cases cited therein (use of word “guild” prohibited because of false impression that plaintiff was a “national” organization); National Hearing Aid Society v. Kentucky ex rel. Hancock (Ky. App. 1977), 551 S.W.2d 247 (“certified” held to be deceptive where course of study did not lead to state certification); see also In re Glacier Publishing International, Inc. (1963), 63 F.T.C. 432 (consent order)
 
 [1]
 
 (“official” used to describe car buying guide found to be deceptive).) Similarly, defendants’ statements that the prices reported in “Red Book” are complete, dependable, impartial, accurate, and current, if proven false, violate the Act because of their capacity to deceive the public.
 

 Defendants seek refuge in their characterization of these statements as mere puffing. But while
 

 “ '*** [i]t is true that a bare and naked statement as to value is ordinarily deemed the opinion of the party making the representation. *** [SJuch statement may be a positive affirmation of a fact, intended as such by the party making it, and reasonably regarded as such by the party to whom it is made. When it is such, it is like any other representation of fact.’ ” Duhl v. Nash Realty Inc. (1981), 102 Ill. App. 3d 483, 489, 429 N.E.2d 1267, quoting Yeoman v. Sherry (1935), 10 Cal. App. 2d 567, 572, 52 P.2d 555, 557.
 

 As our supreme court has indicated, “[statements of value are common examples, and where made in pursuance of a scheme on the part of the defendant to induce plaintiff to trade with him such statements constitute fraud and deceit.” (Buttitta v. Lawrence (1931), 346 Ill. 164, 173, 178 N.E. 390; see also In re Glacier Publishing International, Inc. (1963), 63 F.T.C. 432 (prices reported on basis of nonexistent surveys and tests characterized as deceptive).) Statements that reported prices are “average” values imply more than an assertion of opinion and purport to be statements of fact based on data from actual transactions. These statements, if shown to be false, are therefore deceptive and prohibited by the Act.
 

 Assuming for the purposes of review that the allegations of the complaint are true, the failure to inform subscribers, users, and the public that “Red Book” does not report actual market values but rather reports subjective estimates of prices for automobiles is also deceptive because the actual nature of the reported prices is not otherwise apparent. We conclude that these allegations are sufficient to state a cause of action.
 

 The second group of statements (which we have characterized as pertaining to the contents of “Red Book” rather than to the advertising thereof) presents a different analysis. The Attorney General asserts that the publication of inaccurate, undependable and unreliable valuations and the failure to base valuations on thorough studies of the used car market constitute violations of the Act. We cannot agree. If clearly labeled as an opinion a qualitative evaluation of worth is not a violation of the Act. The Act prohibits deception rather than error. Thus, the prices allegedly contained in “Red Book” are not in themselves deceptive, but become so only in light of defendants’ characterization of them as “official,” “average,” and “accurate,” etc. It follows therefrom that the publication of “Red Book” does not violate the Act. Accordingly, we agree with the circuit court that subparagraphs 24(d) and 24(e) of count I (relating to the alleged inaccuracy of reported prices) do not state a cause of action under the Act. However, the other allegations of count I, as indicated above, are sufficient to state a cause of action under the Act as to the advertising of “Red Book” and the characterization, in advertising and in the book itself, of prices as “average” values. We conclude therefore that the circuit court erred in dismissing count I of the amended complaint.
 

 The next issue for review is whether count II of the amended complaint states a cause of action under the Consumer Fraud and Deceptive Business Practices Act when read in conjunction with the Uniform Deceptive Trade Practices Act (the “uniform act”) (Ill. Rev. Stat. 1981, ch. 121½, par. 311 et seq.). (See Ill. Rev. Stat. 1981, ch. 121½, par. 262.) Section 2 of the uniform act provides specifically that a person commits a deceptive trade practice when he causes likelihood of confusion or misunderstanding as to source, sponsorship, approval, certification of goods or services (Ill. Rev. Stat. 1981, ch. 121½, par. 312(2)), affiliation, connection, or association with other parties (Ill. Rev. Stat. 1981, ch. 121½, par. 312(3)). The allegation that defendants falsely advertise “Red Book” to be “official” and “recognized” authority is sufficient to state a cause of action under these subsections. Subsection 2(5) of the uniform act declares that a representation that goods or services have characteristics, benefits or uses, inter alia, that they do not have, is a deceptive trade practice. (Ill. Rev. Stat. 1981, ch. 121½, par. 312(5).) The allegations that defendants falsely characterized “Red Book’s” car evaluations as complete, current, impartial, accurate, dependable and average values are sufficient to state a cause of action under this subsection. We need not determine whether this subsection also prohibits the defendants’ alleged failure to inform the public and subscribers that “Red Book” does not report actual market values but only reports subjective estimates of value as we find this allegation to state a cause of action under subsection 12, which prohibits “other conduct which similarly creates a likelihood of confusion or of misunderstanding.” (Ill. Rev. Stat. 1981, ch. 121½, par. 312(12).) “
 
 [1]
 
 * * * Under this section, courts are free to enjoin any conduct which creates a likelihood of confusion or of misunderstanding, even though the conduct in question is not explicitly covered by the other sections of the act.’ ” (American Buyers Club of Mt. Vernon, Illinois, Inc. v. Honecker (1977), 46 Ill. App. 3d 252, 258, 361 N.E.2d 1370, quoting Ill. Ann. Stat., ch. 121½, par. 312, Illinois Notes (Smith-Hurd Supp. 1976-77).) Our conclusion that the prices and values contained in “Red Book” are not deceptive in themselves mandates the conclusion that subparagraphs 24(d) and (e) of count I (incorporated by reference into count II) do not state a cause of action under the uniform act. As indicated, however, the other allegations are sufficient to state a cause of action under the uniform act and we accordingly reverse the circuit court’s dismissal of count II of the amended complaint.
 

 The final issue for our review is whether our interpretation of the relevant statutes is inconsistent with the first amendment. The supreme court has stated that “[i]n recent years it has been recognized that even ‘purely commercial’ speech is entitled to a limited degree of first amendment protection. (Bigelow v. Virginia (1975), 421 U.S. 809, 44 L. Ed. 2d 600, 95 S. Ct. 2222; Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council, Inc. (1976), 425 U.S. 748, 48 L. Ed. 2d 346, 96 S. Ct. 1817.) However, the Supreme Court has repeatedly recognized that the first amendment is not a bar to State regulation prohibiting false, misleading or deceptive commercial speech.” (Scott v. Association for Childbirth at Home, International (1981), 88 Ill. 2d 279, 287, 430 N.E.2d 1012.) As we have already noted, it is only the false and misleading statements of defendants which the statutes prohibit. We accordingly find no first amendment impediment to the instant action.
 

 For the foregoing reasons, the judgment of the circuit court is reversed.
 

 Reversed.
 

 LORENZ and SULLIVAN, JJ., concur.
 

 [1]
 

 We recognize that consent orders are not as authoritative as adjudications, but they are not without precedential value. (See FTC v. Mandel Brothers, Inc. (1959), 359 U.S. 385. 391. 3 L. Ed. 2d 893, 898, 79 S. Ct. 818, 823.