128 P.3d 621 (2005)
FIDELITY MORTGAGE CORPORATION, an Arizona corporation, Appellant,
v.
SEATTLE TIMES COMPANY, a Delaware corporation, Arboretum Mortgage Corporation, a Washington corporation, and Alpine Mortgage Services, Inc., a Washington corporation, Respondent.
No. 54841-7-I.
Court of Appeals of Washington, Division 1.
December 19, 2005.
Publication Ordered and Reconsideration Granted January 27, 2006.
*623 Gregory Phillip Cavagnaro, Law Office of Greg Cavagnaro, Bellevue, WA, for Appellant.
James A. Jackson, Reed, Longyear, Mainati & Ahrens, Thomas Scott Hayward, Bruce Edward Humble Johnson, Attorneys at Law, Seattle, WA, for Respondent.
BAKER, J.
¶ 1 Fidelity Mortgage sued the Seattle Times, Arboretum Mortgage, and Alpine Mortgage, alleging that the mortgage rates cited in the Seattle Times' Sunday and quarterly rate directories were false and deceptive. The superior court granted the summary judgment motions of all three defendants on the grounds that Fidelity lacked standing, having failed to produce evidence of proximate causation of damages. We affirm.

I.
¶ 2 Each Sunday, the Seattle Times publishes a sampling of regional mortgage rates from various lenders. The Sunday chart is paid advertising for those lenders, who provide their rates via a survey sent into the Times real estate division. Quarterly, the Times publishes a rate chart which, unlike the weekly chart, is a news article and not paid advertising. Fidelity Mortgage Corporation (Fidelity) was listed in the chart until June 2002. Alpine Mortgage Services (Alpine) and Arboretum Mortgage Corporation (Arboretum) have been listed periodically in the quarterly news chart, but not the Sunday paid advertising chart.
¶ 3 Ron Greene, Fidelity's Regional Manager, complained to the Times and the Department of Financial Institutions (DFI) about alleged inaccuracies in the published charts. DFI investigated and concluded that the annual percentage rates quoted in the charts were "substantially in compliance with Washington State law." Chuck Cross, DFI's Director and Enforcement Chief of the Division of Consumer Services, explained to Greene that rates in the Times' charts were within federal "tolerance" guidelines under the Truth in Lending Act. In other words, because the quoted rates deviated only slightly from the actual rates offered, there was no violation of federal or state law.
¶ 4 Nevertheless, Fidelity sued the Times, Alpine, and Arboretum for violations of the federal Truth in Lending Act[1] (TILA), the Washington Consumer Protection Act[2] (CPA), and the Washington Mortgage Broker Practices Act[3] (WMBPA), claiming that the interest rates listed in the Times' mortgage rate charts were misleading to consumers and unfair to competitors. The federal district court granted summary judgment to the defendants on the TILA claim and the remaining state claims were returned to state court. Fidelity did not appeal the federal court's ruling.
¶ 5 Fidelity claims damages because it alleges that misleading rate quotes in the Times unfairly drew business away from Fidelity. Ron Greene appeared at a Civil Rule 30(b)(6) deposition to discuss damages. Greene's estimate of the amount of damages was "more than a thousand dollars" but "less than a billion." Greene could not name any borrower who went to Alpine or Arboretum instead of Fidelity. After Greene's deposition, Fidelity engaged a statistical expert who calculated that Fidelity had lost $533,438 in loans between January 2002 and June 2003 as a result of the publications.[4] Two declarations were also filed relating to loans allegedly diverted from Fidelity. Neither incident recounted in the declarations involved Alpine or Arboretum.
¶ 6 The Times, Alpine and Arboretum all moved for summary judgment, arguing that *624 Fidelity had no standing under the WMBPA or the CPA. The trial court granted most of the motions, but reserved judgment on the CPA unfair competition claims against Alpine and Arboretum. The court called in Chuck Cross to explain DFI's findings on the Times' charts. Mr. Cross explained that the costs and rates of mortgages are very case-specific and can fluctuate from loan to loan, particularly with adjustable rate mortgages. He reiterated that if the quoted annual percentage rate is within the federal tolerance guidelines, as is the case with the Times charts, then state law is satisfied. The trial court granted summary judgment to Alpine and Arboretum.

II.
¶ 7 When reviewing a summary judgment, we engage in the same inquiry as the trial court.[5] We consider the facts in the light most favorable to the nonmoving party. Summary judgment is appropriate if the pleadings, affidavits, depositions, answers to interrogatories, and admissions on file show that there is no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law.[6]

A. Consumer Protection Act
¶ 8 The Washington Consumer Protection Act (CPA) prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."[7] "Trade" and "commerce" are defined as "the sale of assets or services, and any commerce directly or indirectly affecting the people of the state of Washington."[8] Fidelity argues that the Times, Alpine, and Arboretum can be liable under the CPA for the knowing publication of false, misleading, or deceptive material.
¶ 9 As a threshold matter, the quarterly rate chart is not paid advertising. It is a news article, and as such it is not published "in the conduct of any trade or commerce." It does not fall within those activities governed by RCW 19.86.020. Fidelity cites no authority holding that newspapers can be held liable under the CPA for statements made in news articles. The trial court properly found for the Times on the CPA claim as it relates to the quarterly chart. Because Alpine and Arboretum were only listed in the quarterly news chart, they were not engaging in trade or commerce, and the trial court correctly found for those defendants on the CPA claim as well.
¶ 10 With respect to the Sunday advertising charts, the only defendant is the Times. A CPA civil suit for damages may be brought by "[a]ny person who is injured in his or her business or property by a violation" of the act.[9] This right of action allows private citizens to protect the public interest by showing that
(1) the defendant by unfair or deceptive acts or practices in the conduct of trade or commerce has induced the plaintiff to act or refrain from acting; (2) the plaintiff suffers damage brought about by such action or failure to act; and (3) the defendant's deceptive acts or practices have the potential for repetition.[10]
¶ 11 The Times did not induce Fidelity to act or refrain from acting. Fidelity's claim rests on the assumption that the "misleading" rates induced unknown third parties to act. These third parties might have been considering Fidelity for their residential loan, might have read the Times' chart, might have been misled by rate quotes that were not precise enough, and might have refrained from obtaining a Fidelity mortgage as a result. There is no indication that Fidelity acted or refrained from acting as a result of the Times' rate charts.
¶ 12 Further, Fidelity has failed to establish that the acts complained of constitute unfair or deceptive acts. The federal district *625 court found against Fidelity on its TILA claims, and Fidelity has not challenged that action. Fidelity's claim that the rates are inaccurate is defeated by the failure of its TILA claim combined with the direct testimony of Mr. Cross, who told Fidelity and the trial court numerous times that if a published rate complies with TILA, then state law is satisfied.
¶ 13 In addition, Fidelity cites no authority for the proposition that a newspaper can be held liable under the CPA with respect to advertisements. The cases cited place liability on the advertiser or involve a statute specifically prohibiting false or illegal advertising. People ex rel. Hartigan, v. Maclean Hunter Publishing Corp.[11] cited by Fidelity, actually defeats its argument. In Hartigan, the Illinois Attorney General sued the publisher of a book containing used automobile values under Illinois' Consumer Fraud and Deceptive Business Practices Act.[12] The publisher boasted in advertisements that the book contained "accurate," "current," "dependable" and "average" values,[13] when in fact the state had provided evidence that the values were inaccurate.[14] The appeals court found that the state could maintain the action with respect to the publisher's advertised claims of "accuracy" and "dependability." However, the court held that the publisher could not be held liable under the act for the inaccurate car valuations.
¶ 14 The Hartigan court only held the publisher liable with respect to those statements it made as a direct advertiser of its book, not the misstatements of car values the book contained.[15] To follow the Hartigan reasoning, if the Times had advertised that its Sunday or quarterly rate charts were "accurate" or "official" in an attempt to unfairly compete with other newspapers, then there might be a CPA claim against the Times by competing newspapers. But an action by a mortgage broker based on inaccurate rate quotes does not arise. Fidelity contends that certain statements accompanying the chart qualify as misleading advertisements under Hartigan. However, the Sunday chart includes numerous disclaimers which caution consumers about the vagaries of the mortgage business.[16]
¶ 15 Finally, Fidelity failed to demonstrate that its alleged damages were proximately caused by the defendants. To prevail in its CPA claim, Fidelity must show a causal link between the unfair or deceptive acts and the injury suffered.[17] The test for whether causation is "too remote" has been outlined by the Ninth Circuit:
(1) [W]hether there are more direct victims of the alleged wrongful conduct who can be counted on to vindicate the law as private attorneys general; (2) whether it will be difficult to ascertain the amount of the plaintiff's damages attributable to defendant's wrongful conduct; and (3) whether the courts will have to adopt complicated rules apportioning damages to obviate the risk of multiple recoveries.[18]
¶ 16 There is no proximate causation on these facts. There are more direct victims of this alleged wrongdoing: consumers who may be lured into obtaining mortgages at rates other than those advertised. There are also staggering complexities in ascertaining how many loans were diverted from Fidelity as a result of the Times' chart. Finally the apportionment of damages among the hundreds of lenders and the Times based on *626 degree of fault, causation, number of loans diverted, and potential profitability of the loans is also incredibly complex.
¶ 17 Fidelity cannot maintain its claim of a per se violation of the CPA. A plaintiff must show "(1) the existence of a pertinent statute; (2) its violation; (3) that such violation was the proximate cause of damages sustained; and (4) that they were within the class of people the statute sought to protect."[19] As explained above, Fidelity has not met prongs (2) and (3) of this test.
¶ 18 Fidelity has failed to make any showing of standing, wrongdoing, causation, or damages and has not created a genuine issue of material fact for trial. The trial court properly dismissed all of Fidelity's CPA claims.

B. Washington Mortgage Broker Practices Act
¶ 19 The WMBPA states in relevant part that it is unlawful for a
[L]oan originator, mortgage broker required to be licensed under this chapter... in connection with a residential mortgage loan to:
(1) Directly or indirectly employ any scheme, device, or artifice to defraud or mislead borrowers or lenders or to defraud any person; (2) Engage in any unfair or deceptive practice toward any person;
....
(7) Make, in any manner, any false or deceptive statement or representation with regard to the rates, points, or other financing terms or conditions for a residential mortgage loan or engage in bait and switch advertising; ....[20]
A "mortgage broker" is defined as "any person who for compensation or gain ... makes a residential mortgage loan or assists a person in obtaining or applying to obtain a residential mortgage loan" or holds himself or herself out as able to do the same.[21] Any violation of the WMBPA is a also a violation of RCW 19.86.020, the unfair competition section of the CPA.
¶ 20 Fidelity argues that the Times, Alpine, and Arboretum have violated the WMBPA by engaging in false and misleading "advertising" in the rate charts. While Alpine and Arboretum are clearly covered by the definition of "mortgage broker" under the act, Fidelity contends that the Times is also covered because it has "rendered material, ongoing assistance to a number of mortgage brokers in violating the MBPA."
¶ 21 Fidelity cannot maintain a claim under the WMBPA. Although Alpine and Arboretum are mortgage brokers, Fidelity lacks standing because of a failure to prove causation and damages. The same analysis that applies to the CPA claims applies here. Also, there is no evidence that Alpine and Arboretum have engaged in any deceptive practices "in connection with a residential mortgage loan" as required by RCW 19.146.0201. Fidelity has not produced a single example of a consumer deceived by Alpine or Arboretum. The Times is a newspaper, not a lender or broker. Fidelity's description of the Times does not remotely fit the definition of a mortgage broker, and the Times is not subject to the provisions of the WMBPA.[22] No genuine issue of material fact has been raised. The trial court correctly found against Fidelity on all claims.
¶ 22 Alpine and Arboretum request attorney fees for defending a frivolous appeal. The Times is silent on the issue, but RAP 18.9 provides that this court may consider sanctions for a frivolous appeal sua sponte:
[t]he appellate court on its own initiative or on motion of a party may order a party or counsel ... who uses these rules for the purpose of delay, files a frivolous appeal, *627 or fails to comply with these rules to pay terms or compensatory damages to any other party who has been harmed by the delay or the failure to comply or to pay sanctions to the court.[23]
¶ 23 A frivolous appeal is one which, when all doubts are resolved in favor of the appellant, is so devoid of merit that there is no chance of reversal.[24] This appeal is not based on subtle or even gross distinctions of law. Since 2002, Fidelity has been told by every authority it has approached that the challenged charts are legal. The Department of Financial Institutions, the federal district court, and finally the trial court all concluded that the mortgage rates provided in the Times' charts were within federal guidelines and were not illegal. The trial court also expressly stated that it found "no evidence" of any proximate causation of damages by any defendant. Yet Fidelity pressed its claim, arguing (with no basis in law and contrary to DFI's repeated assurances) that the WMBPA requires more than compliance with federal standards, and that its damages are direct.
¶ 24 The trial court, to its credit, did express concern with Fidelity's allegations, and took great pains to verify that DFI was living up to its obligations as the protector of consumer interests. However, the law was clear. The trial court acknowledged this and properly entered summary judgment in favor of Alpine and Arboretum. Fidelity's brief on appeal is totally devoid of any relevant authority to support its arguments, and its claims do not have any basis in law. There was no possibility of reversal in this case, and reasonable minds could not differ as to the proper outcome. Fidelity shall be required to pay the attorney fees and costs on appeal to the Times, Arboretum, and Alpine.
¶ 25 AFFIRMED.
WE CONCUR: ELLINGTON and BECKER, JJ.
NOTES
[1] 15 U.S.C.A. § 1601.
[2] Ch. 19.86 RCW.
[3] Ch. 19.146 RCW.
[4] This estimate includes loans lost to all Puget Sound area lenders, not just those allegedly lost to Alpine or Arboretum.
[5] Wilson v. Steinbach, 98 Wash.2d 434, 437, 656 P.2d 1030 (1982).
[6] CR 56(c).
[7] RCW 19.86.020.
[8] RCW 19.86.010(2).
[9] RCW 19.86.090.
[10] Anhold v. Daniels, 94 Wash.2d 40, 46, 614 P.2d 184 (1980).
[11] 119 Ill.App.3d 1049, 75 Ill.Dec. 486, 457 N.E.2d 480 (1983).
[12] Hartigan, 75 Ill.Dec. 486, 457 N.E.2d at 482.
[13] Hartigan, 75 Ill.Dec. 486, 457 N.E.2d at 482.
[14] Hartigan, 75 Ill.Dec. 486, 457 N.E.2d at 482-83.
[15] Hartigan, 75 Ill.Dec. 486, 457 N.E.2d at 487.
[16] Examples include: "Rates were provided on Thursday by the lenders and are subject to change without notice;" "Rates are provided for information and comparison purposes only;" "Lock in periods vary from 30 to 60 days;" and "Check with lender for specifics."
[17] Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co., 105 Wash.2d 778, 785, 719 P.2d 531 (1986).
[18] Ass'n of Washington Pub. Hosp. Dists. v. Philip Morris, Inc., 241 F.3d 696, 701 (9th Cir.2001). This test is initially described in the opinion in relation to antitrust claims, but is reapplied to WCPA claims later at 241 F.3d at 706.
[19] Keyes v. Bollinger, 31 Wash.App. 286, 290, 640 P.2d 1077 (1982).
[20] RCW 19.146.0201 (emphasis added).
[21] RCW 19.146.010(12).
[22] Fidelity argues for the first time in its reply brief that the Times' website is a "computer loan information system," also covered by the WMBPA. An issue raised and argued for the first time in a reply brief is too late to warrant consideration. Cowiche Canyon Conservancy v. Bosley, 118 Wash.2d 801, 809, 828 P.2d 549 (1992).
[23] RAP 18.9(a).
[24] Streater v. White, 26 Wash.App. 430, 434-35, 613 P.2d 187 (1980).