FILED
COURT OF APPEALS
DIVISION II

2013 APR -9 AM 9:00

STATE OF WASHINGTON
BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>      Respondent,<br><br>v.<br><br>PAUL W. GEBHARDT,<br><br>      Appellant. | No. 41068-1-II<br><br>UNPUBLISHED OPINION |

BRIDGEWATER, J.P.T.[1] — Paul Gebhardt appeals from his conviction for second degree assault with an aggravating factor of committing the crime against a law enforcement officer; he also appeals the trial court's denial of his motion for a new trial. No claimed error, including the arguments in his statement of additional grounds[2] (SAG), has any merit. We affirm the conviction and the trial court's denial of his motion for a new trial.

## FACTS

On May 29, 2009, at approximately 10:45 PM, Tacoma Police Department Officers Paula Kelly and Ryan Koskovich were dispatched to the area of North 49th and Visscher Street in response to a report of dogs killing a cat. After arriving on the scene, they spoke with the caller, who stated that three dogs had come from the southwest, killed the cat, and were "the neighbors' dogs." Report of Proceedings (RP) at 80-81. Kelly encountered two aggressive dogs and, to prevent an attack on herself, she fired her weapon. An investigation by other responding officers

---

[1] Judge C. C. Bridgewater is serving as a judge pro tempore of the Court of Appeals, Division II, pursuant to CAR 21(c).

[2] RAP 10.10.

ensued concerning her discharge of her firearm.

That investigation led to another investigation when a citizen reported being bitten by a dog that had escaped from the fenced backyard of Gebhardt's residence. While they were still in front of his residence, a truck driven by Gebhardt quickly approached, swerved around Kelly's patrol car onto the street's shoulder, and stopped when Kelly stepped in front of it. Gebhardt exited the truck and contacted the officers. Kelly described his demeanor as "argumentative" and "indignant." RP at 272. At some point, the officers established that Gebhardt owned the dog at which Kelly had fired a round.

Kelly went into an alley to examine the backyard fence's gate and determine how the dog escaped; Gebhardt eventually slammed the gate on her arm causing a scar. Kelly, Koskovich, and other officers entered the backyard to arrest Gebhardt for assault. Gebhardt struggled with the officers on the ground, turned face-up, and obtained a rock. According to Kelly, Gebhardt repeatedly swung the rock toward Koskovich, although Koskovich prevented him from completing his swing and connecting with the rock. Both Koskovich and another officer described the rock as "softball-sized" and testified that, because of its size, they felt the rock presented a life-threatening situation if Gebhardt had swung and connected with it. RP at 573, 680, 682. Rocks were collected from the scene.

Gebhardt's girl friend disputed the officers' version of the events, testifying that Kelly had provoked Gebhardt, he was on the ground when the officers entered the backyard, the officers beat him without provocation, and at no time did he have a rock or offer any resistance.

The State charged Gebhardt with second degree assault of Koskovich with a law enforcement officer aggravating factor, third degree assault of Koskovich, and third degree

assault of Kelly. Before trial, Gebhardt successfully moved to admit audio recordings from his digital recorder. The first recording was 25 minutes long and primarily consisted of Gebhardt's conversations with law enforcement in front of his house and in the backyard before the altercation began; approximately 20 to 30 seconds at the end captured part of the altercation. After an unexplained gap, the second recording captured another 6 seconds of the altercation.

At trial, the jury heard the audio recordings Gebhardt had made of the events, and the jury saw photographs of the officers' injuries and the conditions of their uniforms after the altercation; for example, one of the officers had a cut on one of his fingers and his uniform had dirt on its left shoulder, chest, and knees.

The jury found Gebhardt guilty of second degree assault, found that the State had proven the law enforcement officer aggravating factor, and found Gebhardt guilty of the third degree assault of Koskovich, but it acquitted him of the third degree assault of Kelly.

Gebhardt moved for a new trial based on the trial court's denial of his self defense instruction and instances of prosecutorial misconduct during closing argument. Gebhardt subsequently obtained new counsel, who filed two supplemental motions for a new trial alleging that trial counsel had denied Gebhardt his right to testify in his own defense, the trial court had violated Gebhardt's right to be present, the prosecutor had committed numerous instances of prosecutorial misconduct, and trial counsel had been ineffective on numerous occasions. The trial court denied all these motions. Gebhardt appealed.

## ANALYSIS

### I. RIGHT TO TESTIFY

During trial, the parties and the trial court discussed the need for defense counsel to confer with Gebhardt after his girl friend was excused as a witness, and to confirm whether Gebhardt would testify in order to finalize witness scheduling. The State mentioned, without objection or correction from defense counsel, that defense counsel thought Gebhardt would not testify. After the trial court excused his girl friend as a witness, it addressed defense counsel, stating, "You need some period of time to discuss this issue with your client. Is 15 minutes sufficient?" RP at 1003. After defense counsel agreed, the trial court recessed. When the trial court reconvened, Gebhardt rested his case without testifying.

In an e-mail written to defense counsel after he rested his case, but before the jury returned its verdict, Gebhardt stated, "I am very happy with the way you've conducted trial for the most part and I plan on giving you the civil case." Clerk's Papers (CP) at 509. But in his affidavit supporting his motion for a new trial, Gebhardt stated that he wanted to testify and was "stunned" when defense counsel rested without calling him as a witness. CP at 502. Gebhardt also stated that defense counsel "repeatedly told [him] that [defense counsel] was in charge of his representation," advised him not to testify, and did not tell him that he controlled the decision whether to testify. CP at 502.

At the hearing on Gebhardt's motion for a new trial, the trial court examined a draft transcript of the trial proceedings, read the pertinent portions to the parties, and recalled that the purpose of the 15-minute recess at trial was for defense counsel to confer with Gebhardt

4

regarding whether he would testify. The trial court ruled that Gebhardt's post-trial assertions, without further support, lacked credibility when compared with the trial record.

Gebhardt argues that the trial court abused its discretion in denying his motion for a new trial because trial counsel failed to inform him of his right to testify on his own behalf, thus preventing him from exercising that right. We disagree.

We review a trial court's grant or denial of a motion for a new trial for abuse of discretion. *State v. Jackman*, 113 Wn.2d 772, 777, 783 P.2d 580 (1989). A trial court abuses its discretion when it bases its decision on unreasonable or untenable grounds. *State v. Rafay*, 167 Wn.2d 644, 655, 222 P.3d 86 (2009).

A criminal defendant has a federal and state constitutional right to testify on his or her own behalf. *State v. Thomas*, 128 Wn.2d 553, 556-57, 562, 910 P.2d 475 (1996). This right is fundamental and cannot be abrogated by defense counsel or by the trial court. *Thomas*, 128 Wn.2d at 558. Only the defendant has the authority to decide whether or not to testify. *Thomas*, 128 Wn.2d at 558. Although the defendant does not need to waive the right to testify on the record, such a waiver must be made knowingly, voluntarily, and intelligently. *Thomas*, 128 Wn.2d at 558. Trial courts rely on defense counsel to inform defendants of their constitutional right to testify. *Thomas*, 128 Wn.2d at 560.

"Mere allegations by a defendant that his attorney prevented him from testifying are insufficient to justify reconsideration of the defendant's waiver of the right to testify." *State v. Robinson*, 138 Wn.2d 753, 760, 982 P.2d 590 (1999). Instead, defendants must show some "'particularity'" to give their claims sufficient credibility and show they warrant a reference hearing. *Robinson*, 138 Wn.2d at 760 (quoting *Underwood v. Clark*, 939 F.2d 473, 476 (7th Cir.

5

1991)). In doing so, the defendant must "'allege specific facts'" and must demonstrate those facts' credibility from the record. *Robinson*, 138 Wn.2d at 760 (quoting *Passos-Paternina v. United States*, 12 F. Supp. 2d 231, 239 (D.P.R. 1998)).

For example, in *Robinson*, the defendant provided affidavits from several other people, including a security guard and his trial counsel, stating that the defendant had "pleaded" to testify and that trial counsel refused to reopen the evidence to accommodate Robinson's request because of counsel's frustration with the trial court. *Robinson*, 138 Wn.2d at 756-57, 760-61. Our Supreme Court held that Robinson made a sufficient showing that trial counsel prevented him from testifying, thus warranting remand for a reference hearing on whether his waiver of his right to testify was knowing and voluntary. *Robinson*, 138 Wn.2d at 761.

Unlike in *Robinson*, Gebhardt provided only his own affidavit stating that he was not advised that he controlled his right to testify, he always maintained to defense counsel that he wanted to testify, and he was "stunned" when defense counsel rested without calling him as a witness. RP at 502. These assertions lacked credibility when compared with the record, which demonstrated that defense counsel conferred with Gebhardt specifically on whether he would testify and that Gebhardt was "very happy" with defense counsel's representation immediately after trial. RP at 502. Accordingly, Gebhardt's affidavit, standing alone, was insufficient to warrant a reference hearing. The trial court did not abuse its discretion in denying Gebhardt's motion for a new trial on this basis, and his claim fails.

## II. RIGHT TO BE PRESENT

During trial, on June 10, 2010, after the close of evidence, the trial court memorialized two side bar discussions it had with counsel earlier that day. It stated:

The other side bar was not technically a side bar. It occurred kind of in chambers. You all walked down the hallway at about . . . 10:35 [AM], to advise me that the decision had been made that Mr. Gebhardt was choosing not to testify in this case and, therefore, the defense would come back with the jury present and rest.

RP at 1003.

Gebhardt argues that the trial court abused its discretion in denying his motion for a new trial because this hallway sidebar violated his right to be present during critical stages of his trial or during proceedings affecting his substantial rights. We disagree.

We review constitutional issues de novo. *State v. Irby*, 170 Wn.2d 874, 880, 246 P.3d 796 (2011). Washington courts have "routinely analyzed alleged violations of the right of a defendant to be present by applying federal due process jurisprudence." *Irby*, 170 Wn.2d at 880. Under the federal constitution, "[a] criminal defendant has a fundamental right to be present at all critical stages of a trial." *Irby*, 170 Wn.2d at 880. Washington courts have also recognized that a defendant's right to "appear and defend" under the state constitution may be broader than the federal right to be present, as the state constitutional right attaches to proceedings where a defendant's "substantial rights may be affected." *Irby*, 170 Wn.2d at 885 n.6; *see also State v. Bennett*, 168 Wn. App. 197, 204 n.6, 275 P.3d 1224 (2012) (stating the same).

Even assuming without deciding that a defendant's federal or state constitutional right to be present attaches to proceedings during which defense counsel informs the trial court whether the defendant will testify, violations of the right are subject to constitutional harmless error analysis. *Irby*, 170 Wn.2d at 885-86. Under this standard, the State bears the burden to prove that the error was harmless beyond a reasonable doubt. *Irby*, 170 Wn.2d at 886.

Here, Gebhardt appears to argue that his absence from the hallway side bar deprived him of an opportunity to correct the trial court's conclusion that Gebhardt, after discussing the matter

7

with defense counsel during recess, had chosen not to testify. But the State correctly observes that the trial court notified Gebhardt in open court of the hallway discussion, including defense counsel's representation that Gebhardt chose not to testify. Accordingly, Gebhardt was informed of and had an opportunity to contest defense counsel's earlier representations. Any error in excluding Gebhardt from the earlier hallway discussion was harmless, and his claims fail.

### III. ADMISSION OF DOG BREED EVIDENCE

Gebhardt contends that the trial court abused its discretion in allowing the State and witnesses to refer to Gebhardt's dog as a "pit bull." RP at 38. But Gebhardt fails to support his argument with citations to the record where he objected to these references. We do not address arguments unsupported by citations to the record. *See* RAP 10.3(a)(6); *State v. Thomas*, 150 Wn.2d 821, 874, 83 P.3d 970, *abrogated in part on other grounds*, *Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004). And without an objection, evidentiary errors are not preserved for appeal. *State v. Davis*, 141 Wn.2d 798, 850, 10 P.3d 977 (2000). Accordingly, his claim fails.

### IV. INEFFECTIVE ASSISTANCE OF COUNSEL

Gebhardt also raises several claims of ineffective assistance of counsel that we address in turn. We review claims of ineffective assistance of counsel de novo. *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). To prevail on a claim of ineffective assistance, a defendant must show both deficient performance and resulting prejudice. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Counsel's performance is deficient if it fell below an objective standard of reasonableness. *State v. Stenson*, 132 Wn.2d 668, 705, 940 P.2d 1239 (1997). Our scrutiny of defense counsel's

performance is highly deferential, and we employ a strong presumption of reasonableness. *Strickland*, 466 U.S. at 689; *McFarland*, 127 Wn.2d at 335-36. To rebut this presumption, the defendant bears the burden of establishing the absence of any "'*conceivable* legitimate tactic explaining counsel's performance.'" *State v. Grier*, 171 Wn.2d 17, 42, 246 P.3d 1260 (2011) (quoting *State v. Reichenbach*, 153 Wn.2d 126, 130, 101 P.3d 80 (2004)). To establish prejudice, a defendant must show a reasonable probability that the trial outcome would have been different absent counsel's deficient performance. *State v. Thomas*, 109 Wn.2d 222, 226, 743 P.2d 816 (1987). Failure on either prong of the test is fatal to a claim of ineffective assistance of counsel. *Strickland*, 466 U.S. at 697.

A.    Failure To Make Suppression Motion[3]

Gebhardt argues that defense counsel was ineffective when he failed to move to suppress evidence based on Kelly's unlawful intrusion onto his property by reaching over his fence. When an appellant alleges ineffective assistance of counsel based on the failure to move to suppress evidence, he must show that the trial court likely would have granted the motion. *McFarland*, 127 Wn.2d at 333-34.

Our Supreme Court has held that when police officers (1) are identified as such, (2) are performing their official duties in good faith, and (3) do not exploit any constitutional violation, evidence of assault against them after an unlawful entry is not barred by the exclusionary rule.

---

[3] Gebhardt grossly mischaracterizes the record by stating that defense counsel "moved to suppress evidence that police had any exigent circumstance that permitted them to enter the defendant's property." Br. of Appellant at 10. Gebhardt actually *objected* to the *State*'s motion in limine to *exclude* questions about whether Gebhardt had committed a crime before law enforcement entered his property. Gebhardt argued that he was entitled to inquire about the absence of exigent circumstances in order to demonstrate the unreasonableness of Kelly's actions in testing the fence.

*State v. Mierz*, 127 Wn.2d 460, 475, 901 P.2d 286 (1995). The *Mierz* court reasoned that, in such circumstances, evidence of assault does not flow from the constitutional violation and is outside the exclusionary rule's scope. *Mierz*, 127 Wn.2d at 475. Also, contrary to public policy, suppressing such evidence would allow suspects to assault police officers with impunity in cases of unlawful entry. *Mierz*, 127 Wn.2d at 473-74. Thus, even assuming without deciding that law enforcement officers unlawfully entered Mierz's property, our Supreme Court held that Mierz's assault of the officers did not arise from exploitation of a constitutional violation and, thus, the exclusionary rule did not require suppression. *Mierz*, 127 Wn.2d at 475.

Here, even assuming without deciding that Kelly unlawfully entered Gebhardt's property by reaching over his fence, Gebhardt knew that Kelly was a police officer, Kelly believed she was lawfully investigating the previous dog attacks, and Gebhardt's assault of Kelly and Koskovich did not arise from exploitation of the assumed unlawful entry. Accordingly, the trial court likely would not have granted a motion suppressing evidence of the subsequent assaults. Defense counsel was not ineffective for not moving to suppress evidence of the assaults, and Gebhardt's claim fails.

B.    Failure To Object to Statements or Request Limiting Instructions Re: Dog Attacks

Gebhardt further argues that defense counsel was ineffective when he failed to object to hearsay statements in Kelly's testimony that (1) unidentified dogs had attacked and killed a cat and (2) the citizen's statements that a dog had escaped from Gebhardt's backyard and bitten her.

But the charges in this case arose from assaults against law enforcement officers, not dog attacks. Defense counsel sought to minimize the dog attacks, describing them in closing as a "[r]ed herring" or "rabbit trail." RP at 1168. But defense counsel also actively sought to portray

10

Kelly as "upset" and "agitate[d]" after being attacked by dogs she believed belonged to Gebhardt and had been involved in previous attacks, causing her to "overreact" to Gebhardt's use of the voice recorder and his "tone of voice" in an attempt to "adjust [Gebhardt's] attitude." RP at 1161-63. Defense counsel necessarily needed the audio recordings to establish Kelly's and Gebhardt's tones during their exchanges, and the recordings of the exchanges contained the hearsay statements. Likewise, the neighbor attacked by the dog testified at trial. Thus, conceivably in order to avoid emphasizing them, defense counsel refrained from objecting to any hearsay statements about the dog attacks or requesting an instruction to limit the statements' purpose because they were merely cumulative of the neighbor's testimony or statements in the audio recordings that were central to his theory of the case. Accordingly, defense counsel's lack of objection to these statements was a conceivably legitimate trial tactic. *See Grier*, 171 Wn.2d at 42. Defense counsel's performance was not deficient, and Gebhardt's claim fails.

C.      Failure To Request Limiting Instructions Regarding Dog Ownership Statements

Gebhardt finally argues that defense counsel was ineffective for failing to object to hearsay statements that "the marauding dogs belonged to [him]." Br. of Appellant at 58. But Gebhardt does not cite to any portions of the record in which the trial court admitted hearsay statements expressly stating that the dogs belonged to him. We do not address arguments unsupported by citations to the record. *See* RAP 10.3(a)(6); *Thomas*, 150 Wn.2d at 874.

Even if we addressed this issue on its merits, the audio recording of Gebhardt's interactions with the law enforcement officers contained statements to this effect, and one of defense counsel's themes during closing argument was that Kelly overreacted to Gebhardt's tone during the interactions containing these statements. Accordingly, as stated above, defense

11

counsel needed the audio recording statements as part of his case and conceivably refrained from objecting to cumulative instances of those statements to avoid emphasizing them. Thus, defense counsel's lack of objection was a conceivably legitimate trial tactic and did not constitute deficient performance. Gebhardt's claim fails.

## V. PROSECUTORIAL MISCONDUCT

Gebhardt raises numerous claims of prosecutorial misconduct, which we address in turn. A defendant claiming prosecutorial misconduct must show both improper conduct and resulting prejudice. *State v. Fisher*, 165 Wn.2d 727, 747, 202 P.3d 937 (2009). Prejudice exists where there is a substantial likelihood that the misconduct affected the verdict. *State v. McKenzie*, 157 Wn.2d 44, 52, 134 P.3d 221 (2006). We review a prosecutor's comments during closing argument in the context of the total argument, the issues in the case, the evidence addressed in the argument, and the jury instructions. *State v. Dhaliwal*, 150 Wn.2d 559, 578, 79 P.3d 432 (2003). If a defendant establishes that the State made improper statements, then we review whether those improper statements prejudiced the defendant under one of two different standards of review. *State v. Emery*, 174 Wn.2d 741, 760-61, 278 P.3d 653 (2012).

First, where the defendant preserved the issue by objecting at trial, we evaluate whether there was a substantial likelihood that the improper comments prejudiced the defendant by affecting the jury. *Emery*, 174 Wn.2d at 761. But if the defendant failed to object to the improper argument at trial, we employ a different standard of review. *See Emery*, 174 Wn.2d at 760-61. Under this second, heightened standard, the defendant must show that the State's misconduct "was so flagrant and ill intentioned that an instruction could not have cured the resulting prejudice." *Emery*, 174 Wn.2d at 761-62. This more stringent standard of review

requires the defendant to show that "(1) 'no curative instruction would have obviated any prejudicial effect on the jury' and (2) the misconduct resulted in prejudice that 'had a substantial likelihood of affecting the jury verdict.'" *Emery*, 174 Wn.2d at 761 (quoting *State v. Thorgerson*, 172 Wn.2d 438, 455, 258 P.3d 43 (2011)). In conducting this analysis, we focus more on whether the prejudice resulting from the State's misconduct could have been cured. *Emery*, 174 Wn.2d at 762.

A.    Claims Not Addressed

Gebhardt argues that the prosecutor committed prosecutorial misconduct requiring reversal when he "advised the police witnesses to not answer questions about [Tacoma Police Department] policies and training regarding use of force on citizens"; "prevented trial counsel from questioning witnesses about [whether 'Gebhardt's dogs had terrorized the neighbor on more than one occasion prior to the charged date]"; "prevented trial counsel from asking the animal control officer about any prior contacts with Mr. Gebhardt about [sic] his dogs"; and "violated the court's order regarding the scope of the evidence he could adduce regarding police job consequences if officers lied"[4] during closing argument. Br. of Appellant at 42-43, 48.

But Gebhardt fails to support any of these claims with citations to relevant parts of the record or discuss his citations with particularity. It is not the function of an appellate court "to comb the record with a view toward constructing arguments for counsel." *In re Estate of Lint*,

---

[4] Gebhardt again grossly misrepresents the record. Gebhardt claims that the "trial court sustained [his] motion to exclude this evidence that Kelly . . . was subject to punishment if she falsified police reports, committed perjury, or used excessive force" and that the trial court entered an "order" excluding all such evidence. Br. of Appellant at 11, 48. But the trial court sustained only Gebhardt's objection, based on relevance, to Kelly's testimony about how many years she planned to remain serving as a police officer.

No. 41068-1-II

135 Wn.2d 518, 532, 957 P.2d 755 (1998); *see also* RAP 10.3(a)(6). Accordingly, we do not address these claims.

Further, Gebhardt contends that the prosecutor committed misconduct when he "argued that all of the police would have had to engage in a dastardly and criminal conspiracy had they perjured themselves in the same way." Br. of Appellant at 48 (emphasis omitted). Beyond this solitary, conclusory statement, Gebhardt offers no further argument supporting this claim. "Passing treatment of an issue or lack of reasoned argument is insufficient to merit judicial consideration." *State v. Hathaway*, 161 Wn. App. 634, 650 n.10, 251 P.3d 253, *review denied*, 172 Wn.2d 1021 (2011). Accordingly, we do not address this claim.

B.     "Just Verdict" and "Declare The Truth" Arguments

During closing argument, the prosecutor urged the jury to return a "just verdict" and a "true verdict according to the evidence and the law." RP at 1112. The prosecutor also stated:

> The word "verdict" itself comes from the Latin word "veredictum," which means to declare the truth. And so by your decision in this case, you will declare the truth about whether the defendant assaulted Ryan Koskovich, and the truth about whether he assaulted Paula Kelly.

RP at 1113-14.

Gebhardt contends that these arguments constituted prosecutorial misconduct requiring reversal. We disagree. The just verdict and true verdict arguments, when viewed in context, were proper. Further, although the "declare the truth" argument was improper, Gebhardt did not object to it at trial, which would have allowed the trial court to negate any prejudice with a curative instruction.

We have recently held that "[i]t is not misconduct for the State to ask the jury to return a just verdict supported by the evidence." *State v. Fuller*, 169 Wn. App. 797, 822, 282 P.3d 126

14

(2012) (citing *State v. Curtiss*, 161 Wn. App. 673, 701, 250 P.3d 496, *review denied*, 172 Wn.2d 1012 (2011)). Because the State asked the jury to return a just or true verdict supported by the evidence and consistent with the law, the prosecutor's argument was not improper.

But our Supreme Court has held that the "declare the truth" argument is improper. *Emery*, 174 Wn.2d at 760. Because Gebhardt did not object to the argument at trial, however, we review this claim under a heightened standard, asking whether "(1) 'no curative instruction would have obviated any prejudicial effect on the jury' and (2) the misconduct resulted in prejudice that 'had a substantial likelihood of affecting the jury verdict.'" *Emery*, 174 Wn.2d at 761 (quoting *Thorgerson*, 172 Wn.2d at 455). As our Supreme Court observed in *Emery*, such an argument could have been cured by an instruction from the trial court. *Emery*, 174 Wn.2d at 764. Thus, because Gebhardt failed to object to the argument at trial and obtain a curative instruction, his claim fails. *Accord Emery*, 174 Wn.2d at 764.

C.    Vouching For Witnesses

During trial, Kelly testified that honesty was "paramount" for police officers because "dishonesty" would "ruin [an officer's] credibility" and everything an officer said "beyond that point would always come under suspicion." RP at 533. She also testified that police officers must certify police reports under penalty of perjury and that, as a felony, a perjury conviction would end her police career because she would be stripped of her right to possess firearms. During closing argument, the prosecutor stated:

> [A]s you go through their testimony and consider their testimony, keep in mind that there really isn't anything that a police officer can do that's more damaging or career ending than to lie about a contact with a suspect.
> Well, I suppose there is one thing worse than filling out a police report that has falsity, and that is taking the stand and raising your right hand and swearing to tell the truth under penalty of perjury. Because a police officer with a

perjury conviction, a police officer with a perjury charge, a police officer who is rumored to have committed perjury, has zero credibility left and that's the end.

RP at 1126-27.

Gebhardt argues that these closing arguments constituted improper vouching for witness credibility. It is improper for a prosecutor to state a personal belief as to the credibility of a witness. *State v. Warren*, 165 Wn.2d 17, 30, 195 P.3d 940 (2008). But we will not find prejudicial error "unless it is clear and unmistakable that counsel is expressing a personal opinion," such as, "'I believe [the witness]. I believe him.'" *Warren*, 165 Wn.2d at 30; *State v. Brett*, 126 Wn.2d 136, 175, 892 P.2d 29 (1995) (emphasis omitted) (quoting *State v. Sargent*, 40 Wn. App. 340, 343, 698 P.2d 598 (1985)). And a prosecutor has wide latitude to comment on the evidence introduced at trial and to draw inferences from that evidence. *Fisher*, 165 Wn.2d at 747.

Here, the prosecutor did not make statements of personal belief about the law enforcement witnesses' credibility. Rather, he argued inferences from the evidence adduced at trial regarding the potential consequences of dishonesty and perjury on a police officer's career. Accordingly, the prosecutor's arguments were not improper, and Gebhardt's claim fails.

D.     Comment on Constitutional Right

Finally, during closing argument and in the context of explaining why the State did not have to prove Gebhardt's motive, the prosecutor stated:

> I mean, when you take a step back and look at this case, you have to say to yourself, what was so important about that backyard that the defendant was so determined to keep the police from? Turns out they're inside of it and there isn't anything controversial about it, anything at all. And so, you know, it would be an impossible task to put on the State proving why people do what they do.

RP at 1115.

16

Gebhardt argues that the prosecutor committed misconduct requiring reversal when he impermissibly commented on Gebhardt's constitutional right to exclude law enforcement from his property. But a prosecutor may touch on a defendant's exercise of a constitutional right, provided the prosecutor does not "'manifestly intend[] the remarks to be a comment on that right.'" *State v. Gregory*, 158 Wn.2d 759, 807, 147 P.3d 1201 (2006) (quoting *State v. Crane*, 116 Wn.2d 315, 331, 804 P.2d 10 (1991)).

Here, when viewed in context, the prosecutor's argument was an explanation of why the State did not have to prove motive, as opposed to a comment manifestly inviting the jury to draw a negative inference from Gebhardt's exercise of a constitutional right. Accordingly, the prosecutor's argument was not improper, and Gebhardt's claim fails.

## VI. SUFFICIENCY OF THE EVIDENCE

Gebhardt argues that sufficient evidence does not support his conviction for second degree assault. We disagree.

Sufficient evidence supports a conviction if, when viewed in the light most favorable to the State, any rational trier of fact could have found the essential elements of the charged crime proved beyond a reasonable doubt. *State v. Hosier*, 157 Wn.2d 1, 8, 133 P.3d 936 (2006). On appeal, we draw all reasonable inferences from the evidence in favor of the State and interpret them most strongly against the defendant. *Hosier*, 157 Wn.2d at 8. In the sufficiency context, we consider circumstantial evidence as probative as direct evidence. *State v. Goodman*, 150 Wn.2d 774, 781, 83 P.3d 410 (2004). We may infer specific criminal intent of the accused from conduct that plainly indicates such intent as a matter of logical probability. *Goodman*, 150

Wn.2d at 781. We defer to the fact finder on issues of conflicting testimony, witness credibility, and persuasiveness of the evidence. *Thomas*, 150 Wn.2d at 874-75.

Gebhardt specifically argues that, "[g]iven the wild inconsistencies between the State's witnesses, this court must find" that sufficient evidence does not support Gebhardt's second degree assault conviction. Br. of Appellant at 66. But we defer to the fact finder on such issues. *Thomas*, 150 Wn.2d at 874-75. Further, Gebhardt yet again fails to support many of his factual assertions[5] with citations to the record. To the extent, if any, that Gebhardt raises sufficiency challenges not based on witness credibility, we ordinarily would not consider those challenges. *Lint*, 135 Wn.2d at 532; *see also* RAP 10.3(a)(6). However, because Gebhardt also raises the issue in his SAG, we nonetheless consider the merits of his sufficiency challenge.

In order to convict Gebhardt of second degree assault of Koskovich, the State had to prove that Gebhardt assaulted Koskovich with a deadly weapon. The trial court's instructions to the jury defined an "assault" in two ways: (1) "an act done with intent to inflict bodily injury upon another, tending but failing to accomplish it and accompanied with the apparent present ability to inflict the bodily injury if not prevented" and (2) "an act done with the intent to create in another apprehension and fear of bodily injury, and which in fact creates in another a reasonable apprehension and imminent fear of bodily injury." CP at 328. Finally, the trial court's instructions defined "[d]eadly weapon" as "any weapon, device, instrument, substance, or article, which under the circumstances in which it is used, attempted to be used, or threatened to be used, is readily capable of causing death or substantial bodily harm. CP at 329.

---

[5] And Gebhardt yet again misrepresents the record. For example, he claims that Renae Campbell, a forensics technician, testified "for" him, when Campbell actually testified as a rebuttal witness for the State.

Here, Gebhardt repeatedly swung a softball-sized rock toward Koskovich. The jury could reasonably infer Gebhardt's intent to inflict or create an apprehension of bodily injury from his actions. Further, Koskovich and another officer testified that they felt that Gebhardt's acts threatened their lives and, thus, had a reasonable apprehension and imminent fear of bodily injury. Finally, the jury could reasonably infer from the rock's size and the officers' testimony that the rock, when used as a club during a struggle on the ground, was capable of causing death or substantial bodily harm. Accordingly, sufficient evidence supported Gebhardt's conviction, and his claim fails.

## VII. FAILURE TO PROVIDE DRAFT TRIAL TRANSCRIPTS

Gebhardt contends that the trial court abused its discretion during the hearing on his motion for a new trial by failing to provide copies of the draft trial transcripts reviewed by the trial court. But in support of his argument, he cites only CR 5 for the proposition that "superior court rules also mandate that the *parties* serve upon each other all written materials to be relied upon, for example, in motions before the court." Br. of Appellant at 28-29 (emphasis added).

Gebhardt fails to explain how CR 5 compels the trial court, a nonparty, to provide such draft transcripts in a criminal trial; nor does he cite any relevant authority supporting that proposition. We do not consider claims unsupported by argument or citation to legal authority. RAP 10.3(a)(6); *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).

19

## VIII.   SAG ISSUES

Gebhardt also raises numerous issues in his SAG. We address each in turn, finding them meritless.

A.    Prosecutorial Misconduct

Gebhardt argues that the prosecutor committed reversible misconduct by referring to one of Gebhardt's dogs as a "pit bull" and "encouraging" or "allowing" his witnesses to do so. SAG at 2. But Kelly testified that the dog "looked like a [pit bull]," that she was familiar with American Bulldogs, and they both have the "same general characteristics." SAG at 1-2. Accordingly, the prosecutor's and witnesses' statements were supported by the evidence and, thus, proper. Moreover, even if they were improper, there is no substantial likelihood that incorrect references to a dog's breed affected the jury's verdict in a case involving assault on law enforcement officers with a fence gate and a rock. Accordingly, Gebhardt cannot establish prejudice, and his claim fails.

Gebhardt further contends that the prosecutor committed reversible misconduct when he referred to Gebhardt's dog as a "dangerous dog" or "potentially dangerous dog" and allowed Kelly to use the "dangerous dog" term during her testimony. SAG at 2. But Gebhardt cites to statements made by the prosecutor during *pretrial* proceedings. Moreover, Kelly testified only that the neighbor's report of being attacked by a dog necessitated an expanded investigation because such a dog "could be deemed as a dangerous dog." RP at 258. Accordingly, even if the statements were improper, Gebhardt fails to show a substantial likelihood that pretrial statements or a self-evident statement during trial affected the jury's verdict in this assault case. *See Emery*, 174 Wn.2d at 760. Gebhardt cannot demonstrate prejudice, and his claim fails.

20

Gebhardt also argues that the prosecutor committed reversible misconduct by "knowingly giving misleading information regarding the definition of 'reasonable doubt'" during closing argument. SAG at 2. Although RAP 10.10 does not require the appellant to refer to the record or cite authority, he is required to inform us of the "nature and occurrence of the alleged errors." These assertions of error are too vague to allow us to identify the issue and we do not reach it.

Gebhardt finally contends that the prosecutor committed reversible misconduct during closing argument when he called Gebhardt an "arrogant jerk," "obnoxious citizen," "attitudinal," "belligerent," and other disparaging terms, and stated that Gebhardt "richly deserved" getting "beat[en] up." SAG at 2. Although the prosecutor's statements were perhaps ill-considered, he explained that they were based on evidence of Gebhardt's behavior preceding the altercation, not Gebhardt's character, and that the jury could reach their own conclusion from the audio recordings and other evidence it heard. Accordingly, the prosecutor argued proper inferences from the evidence, and Gebhardt's claim fails.

B.    Ineffective Assistance of Counsel

Gebhardt argues that defense counsel was ineffective during closing argument when he contradicted the girl friend's testimony. But defense counsel argued only that, if the jury disbelieved her testimony that Gebhardt was not standing at the fence when Kelly's arm was injured, it might still find that Gebhardt did not intentionally injure her. Defense counsel's argument was not deficient in pursuing a legitimate trial tactic, and Gebhardt's claim fails. *See Grier*, 171 Wn.2d at 42.

Gebhardt next contends that defense counsel was ineffective during trial when he referred to the altercation as a "fight." SAG at 2. But two instances of defense counsel using terms that

offend Gebhardt's subjective preferences cannot constitute objectively deficient performance by any measure. *See Stenson*, 132 Wn.2d at 705. His claim fails.

Gebhardt further contends that defense counsel was ineffective when he prevented Gebhardt from testifying and failed to inform him of his constitutional right to testify. Because we disposed of this claim above, we do not address it again.

Gebhardt next argues that defense counsel was ineffective when he advised Gebhardt against moving for the trial court judge to recuse herself after she informed the parties that she was a next-door-neighbor to Sergeant Kirk Martin, a police officer involved in Gebhardt's arrest. But this alleged advice by defense counsel refers to matters outside of the record. This court will not review claims based on matters outside the record on direct appeal. *McFarland*, 127 Wn.2d at 335.

Gebhardt also contends that defense counsel was ineffective when he did not cross-examine the neighbor attacked by Gebhardt's dog. But the neighbor testified primarily about being attacked by Gebhardt's dog. As we discussed above, this was an assault case that was not based on dog attacks, and defense counsel referred to the evidence of dog attacks as a "[r]ed herring" or "rabbit trail" in closing argument. RP at 1168. Defense counsel was conceivably trying to minimize such evidence and did not provide deficient performance by pursuing a legitimate trial tactic. *See Grier*, 171 Wn.2d at 42; *Stenson*, 132 Wn.2d at 705. His claim fails.

Gebhardt additionally argues that defense counsel was ineffective when he failed to object to the admission into evidence during Koskovich's testimony of one of the rocks collected from the scene. But Koskovich also testified that he could not identify the rock as the one with which Gebhardt tried to strike him. Even assuming without deciding that defense counsel was

deficient, Gebhardt cannot demonstrate a reasonable probability that its admission affected his trial's outcome. *See Thomas*, 109 Wn.2d at 226. His claim fails.

Gebhardt further argues that defense counsel was ineffective when he "did not adequately protect, or lay the foundation for, [Gebhardt's] constitutional right to a claim of self-defense." SAG at 3. But the record reflects that defense counsel, albeit unsuccessfully, requested a self defense instruction and provided the trial court with relevant facts and legal authority. Merely because Gebhardt is subjectively dissatisfied with the trial court's denial of the instruction does not demonstrate that counsel's performance was objectively deficient. His claim fails.

Gebhardt next argues that defense counsel was "unorganized," often "had no input," at one point lost his train of thought, had to "paw[] around" for documents during trial, and erroneously informed him before trial that he faced only a maximum of five years in prison. SAG at 3-4. But Gebhardt's contention that defense counsel often "had no input" lacks sufficient specificity to address. And losing one's train of thought on a single occasion does not constitute objectively deficient performance. Gebhardt's assertions that defense counsel was "unorganized" and erroneously advised him on sentencing consequences refer to matters outside of the record that we will not address on direct appeal. *McFarland*, 127 Wn.2d at 335.

Finally, Gebhardt argues that defense counsel was ineffective when he did not call witnesses to provide medical expert testimony about his injuries. Even assuming without deciding that defense counsel's performance was deficient, Gebhardt cannot demonstrate that a medical witness would have testified in his favor and, therefore, that he was prejudiced without such testimony. His claim fails.

23

C.    Self Defense Instruction

Gebhardt contends that the trial court erred in refusing to give his requested self defense instruction because there was no evidence that the police officers unlawfully arrested him. We review a trial court's refusal to give a self defense instruction based on insufficient evidence to support the instruction for abuse of discretion. *State v. Read*, 147 Wn.2d 238, 243, 53 P.3d 26 (2002). A trial court abuses its discretion when it bases its decision on unreasonable or untenable grounds. *Rafay*, 167 Wn.2d at 655. And we may affirm on any ground supported by the record. *State v. Costich*, 152 Wn.2d 463, 477, 98 P.3d 795 (2004).

Our Supreme Court has held that "[o]ne cannot deny that he struck someone and then claim that he struck them in self-defense." *State v. Aleshire*, 89 Wn.2d 67, 71, 568 P.2d 799 (1977) (defendant denied participating in bar fight leading to assault charges). Divisions One and Three of this court have also held that defendants are not entitled to self defense instructions if they deny committing the act underlying the charged crime. *State v. Barragan*, 102 Wn. App. 754, 762, 9 P.3d 942 (2000); *State v. Gogolin*, 45 Wn. App. 640, 643-44, 727 P.2d 683 (1986) (defendant denied underlying assault); *accord State v. Pottorf*, 138 Wn. App. 343, 348, 156 P.3d 955 (2007) ("A defendant asserting self-defense is ordinarily required to admit an assault occurred.").

Here, Gebhardt presented no evidence in his case that he struck or attempted to strike any of the officers. To the contrary, his defense consisted of a complete denial of such actions. Accordingly, his general denial defense precluded a self defense instruction, and the trial court did not abuse its discretion in refusing to give one. *Accord Aleshire*, 89 Wn.2d at 71.

24

D.    Jury Questionnaire

Gebhardt argues that the trial court abused its discretion when it denied his request to use a jury questionnaire during voir dire. But trial courts have wide discretion to manage the voir dire process, and we will grant relief only if the defendant can show that the trial court abused its discretion and the defendant's rights were substantially prejudiced. *State v. Davis*, 141 Wn.2d 798, 825-26, 10 P.3d 977 (2000).

Here, the State observed that there was nothing unique about Gebhardt's case, there was no publicity surrounding his case, and the questionnaire was not specific to his case's facts. And the trial court observed that jury questionnaires "dramatically" slow the jury selection process and that it generally allows them only in cases where the potential jurors might be hesitant to disclose private, case-relevant information, such as in sex offense cases. RP at 11-12. Given these facts, the trial court's denial of a jury questionnaire was reasonable, and it did not abuse its discretion. Gebhardt's claim fails.

E.    Sufficiency of the Evidence

Gebhardt, making arguments based on witness credibility, contends that sufficient evidence does not support his second degree assault conviction. Because we addressed and rejected these arguments above, we do not address them again.

F.    Admission of Audio Recording Transcript

Gebhardt argues that the trial court abused its discretion in admitting the State's transcript of the audio recordings as an illustrative reading aid. We review a trial court's decision to admit evidence for illustrative purposes for abuse of discretion. *State v. Allen*, 72 Wn.2d 42, 44-45, 431 P.2d 593 (1967). Here, the trial court reasoned that the State laid a proper foundation for the

transcripts and their accuracy through Kelly's testimony and informed Gebhardt that he would have "great leeway" to establish inaccuracies during cross-examination. RP at 304-05, 311-12. The trial court also instructed the jury that the transcripts were "intended strictly as a listening aid"; and it collected the transcripts from the jury after the tape was played in open court. RP at 313-14. Accordingly, the trial court did not abuse its discretion, and Gebhardt's claim fails.

G.    Appearance of Fairness

Gebhardt contends for the first time on appeal that the trial court demonstrated bias towards the State by (1) sustaining the State's objections without requiring a supplied basis or supplying the basis itself, (2) allowing Martin to "overhear private conversation between counsel and the court outside the presence of the jury," and (3) allowing the State to have Koskovich retrieve evidence from the property room during trial. SAG at 7. We construe these claims of bias as arguments that the trial court violated the appearance of fairness doctrine.

An appearance of fairness claim is not "constitutional" in nature under RAP 2.5(a)(3) and, thus, may not be raised for the first time on appeal. *See State v. Morgensen*, 148 Wn. App. 81, 90-91, 197 P.3d 715 (2008); *see also City of Bellevue v. King County Boundary Review Bd.*, 90 Wn.2d 856, 863, 586 P.2d 470 (1978) ("Our appearance of fairness doctrine, though related to concerns dealing with due process considerations, is not constitutionally based."). Accordingly, Gebhardt failed to preserve these issues for appeal when he failed to object below, and his claim fails.

## IX. CUMULATIVE ERROR

Gebhardt finally contends in his opening brief that he is entitled to a new trial under the cumulative error doctrine. But the doctrine does not apply where the alleged errors are few and

have little or no effect on the trial's outcome. *State v. Weber*, 159 Wn.2d 252, 279, 149 P.3d 646 (2006). Gebhardt identifies one improper—but curable—argument by the prosecutor, and we have already concluded that the few errors we assume for the sake of argument had no effect on the trial's outcome. Thus, Gebhardt's claim fails.

## X. SANCTIONS

Appellant's counsel is highly experienced. She knows the Rules of Appellate Procedure (RAPs) and knows how to comply with them. But, in numerous instances, Gebhardt's counsel did not comply with the RAPs in preparing Gebhardt's brief. She did not cite to the record as is required, which forced us to attempt to ascertain the precise content and basis of the alleged errors. She also grossly mischaracterized the record on several occasions and failed to provide sufficient argument or citations to authority for numerous issues. These violations of the rules cannot go unnoticed or unpunished. We may impose sanctions under RAP 18.9 sua sponte. *See Fidelity Mortg. Corp. v. Seattle Times Corp.*, 131 Wn. App. 462, 473, 128 P.3d 621 (2005); RAP 18.9(a) (appellate court may "on its own initiative" impose sanctions for failure to comply with the RAPs). Accordingly, we impose a sanction in the amount of $250 to be paid within 60 days of the mandate's issuance in this case.

Affirmed.

A majority of the panel having determined that this opinion will not be printed in the

No. 41068-1-II

Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Bridgewater, J.P.T.

We concur:

_____
Hunt, J.

_____
Van Deren, J.